UNITED STATES v. SEVENTY-FIVE BALES OF TOBACCO.

(Circuit Court of Appeals, Second Circuit. June 20, 1906.)

No. 269.

1. CUSTOMS DUTIES—FORFEITURE—FALSE ENTRY—FRAUDULENT INTENT.

Section 9, Customs Administrative Act June 10, 1890, c. 407, 26 Stat. 135 [U. S. Comp. St. 1901, p. 1895], providing forfeiture and other penalties for the fraudulent entry of imported goods, should be construed strictly. It was not intended to apply to errors of judgment, but to acts plainly indicating a wrongful intent to defraud the government; and a mere mistake in the description of imported merchandise, unaccompanied by acts from which an intent to defraud may be presumed, is insufficient to justify forfeiture under this section.

[Ed. Note.—For cases in point, see vol. 15, Cent. Dig. Customs Duties, §§ 261, 263.]

2. SAME—ERRONEOUS DESCRIPTION OF TOBACCO.

An importation of tobacco, a part consisting wholly of wrapper, a part of filler, and a part of wrapper and filler mixed, was invoiced and entered

as "tobacco fillers." Filler tobacco was subject to a lower rate of duty than mixed tobacco or wrapper tobacco, under paragraphs 213–4, Tariff Act July 24, 1897, c. 11, § 1, Schedule F, 30 Stat. 169 [U. S. Comp. St. 1901, p. 1648]. *Held* that, in the absence of circumstances indicating a fraudulent intent on the part of the importers, the entry could not be considered to have been made "by means of a false or fraudulent invoice," by reason of which the tobacco should be forfeited under section 9, Customs Administrative Act June 10, 1890, c. 407, 26 Stat. 135 [U. S. St. 1901, p. 1895].

[Ed. Note.—For cases in point, see vol. 15, Cent. Dig. Customs Duties, §§ 263, 264.]

3. SAME—COLLATERAL ISSUES—BOARD OF GENERAL APPRAISERS—JURISDICTION.
    In proceedings for the forfeiture of imported merchandise, questions as to classification of the merchandise may be left undecided, to be determined by the Board of General Appraisers.

In Error to the District Court of the United States for the Southern District of New York.

The full title of this cause is United States v. Seventy-Five Bales of Tobacco (amended to Forty-Nine Bales), etc., Selgas, Suarez & Co. claimants.

At the trial below the court, Holt, District Judge, directed a verdict in the following language:

"It is, of course, the fact that a reliquidation and a reappraisement can be had in any case where property is claimed to have been erroneously appraised at first, and upon such reliquidation the proper amount of duties can be ascertained. It seems to me clearly, on the evidence as it stands now in this case, that the first appraisement, that the subsequent one was correct, and that the amount of duties to be paid upon the property should be larger than was claimed in the first place; but the question as to how much duty should be paid on the property is very different from the question whether the property itself can be confiscated for a violation of the revenue laws. The provision under which this proceeding is brought provides, by section 9, Customs Administrative Act June 10, 1890, c. 407, 26 Stat. 135 [U. S. Comp. St. 1906, p. 1895]: 'If any importer or owner  *  *  *  shall make or attempt to make any entry of imported merchandise by means of any fraudulent or false invoice, affidavit,  *  *  *  or by means of any false or fraudulent practice or appliances whatsoever, or shall be guilty of any willful act or omission by means whereof the United States shall be deprived of the lawful duties.  *  *  *'

"Now, the principal point of contention between the two cases in this circuit [U. S. v. Cutajar (C. C.) 60 Fed. 744, and U. S. v. Rosenthal (C. C.) 126 Fed. 766] and the case in the Western Circuit [U. S. v. Ninety-Nine Diamonds (C. C. A.) 139 Fed. 961] seems to be whether it was necessary that the United States be deprived of its duties in all these cases. The cases in this Circuit hold that it is not essential that that should have taken place; and I concur in that view as a question of opinion, though it would be my duty to follow it in any case, irrespective of my personal opinion. I think if an importer attempts to make an entry by any false invoice, that portion of this statute comes into operation.

"Now, in this case there was an invoice which is claimed to have been false in this respect, that it described the 108 bales as 'leaf tobacco fillers.' As far as I recall, the only evidence in the case of falsehood is what appears on the face of the invoice and the entry and the oath in the ordinary form upon it. There is not any evidence, as in many of these cases, of furtive or fraudulent conduct on the part of the shippers or of the persons receiving the merchandise here, indicating a guilty knowledge on their part of the falsity of the invoice or of an attempt to smuggle generally. The whole basis of the claim, as I understand it, is that there was a false description on the face of the invoice of what this property was. Now, in order to pass upon the question whether that was such a false statement as would justify a con-

fiscation of the property, I think it is important to look at the section of the act in regard to the importation of tobacco. That is paragraph 213, Tariff Act July 24, 1897, c. 11, § 1, Schedule F, 30 Stat. 169 (U. S. Comp. St. 1901, p. 1648). That section is quite peculiar. Ordinarily, if a man describes a certain kind of property which was being imported, as another kind of property, and these two kinds of property were such as to be easily passed one for the other, but were in fact clearly distinguished from each other and paid a different duty, the jury might be justified in drawing the inference from the mere fact of such a statement made on the invoice, that it was a false statement and intentionally made in order to deprive the government of its duties; but in this case there is an assumption, I think, in the language of the statute, that a considerable quantity of tobacco which is imported in the natural course of business is neither wrapper tobacco nor filler tobacco, but is tobacco a portion of which could be used for one purpose and another portion for another purpose. The language of the act is, 'wrapper tobacco and filler tobacco when mixed or packed with more than fifteen per centum of wrapper tobacco, and all leaf tobacco the product of two or more countries * * * when mixed or packed together, * * * one dollar and eighty-five cents per pound,' and 35 cents per pound for filler tobacco. And then it says: 'Collectors of customs shall not permit entries to be made, except under regulations to be prescribed by the Secretary of the Treasury, of any leaf tobacco, unless the invoices of the same shall specify in detail the character of such tobacco, whether wrapper or filler, its origin,' etc.; and the provisions of the regulations of the Treasury Department are of the same description, as I recall it. Officers of the customs are instructed to refuse entry of any leaf tobacco the invoices of which do not specify in detail the character of the tobacco, whether wrapper or filler, its quality, and the province or district of origin,

"Now, it seems to me that if an importer looked at this act, and looked at these instructions, the natural inference for him to draw from this statute would be that in describing the tobacco in the invoice he should put it in either wrapper or filler. If it was all wrapper, he would put it in wrapper. If it was only partly wrapper, he would put it in filler. I suppose, unless he also filled in in detail the language of the act, when he might say in the invoice, 'filler tobacco mixed or packed with more than fifteen per cent. of wrapper tobacco.' In order to do that in this case, as I understand it, he would have to describe which bales were wrapper and which bales were filler. I understand that there is evidence that there was some strictly filler and some not 15 per cent. and some over 15 per cent.; and if he was to pass upon each case I should think he would have to describe it on the face of the invoice, and that might involve, in the first place, a long entry to be made on the invoice. It would require a degree of care and accuracy in making up the invoice which seems unreasonable, in view of the fact that the property is going to be examined here; and it seems to me, under these circumstances, that if a man shipping a quantity of tobacco, a portion of which is filler tobacco, mixed or packed with more than 15 per cent. of wrapper tobacco, and a portion of which is filler tobacco which is not mixed with an amount equal to 15 per cent. of wrapper, it is natural that he should describe it as filler, and that there is no legitimate inference to be drawn from the fact that he does not describe it as filler, that he is attempting to smuggle the goods into the country, or that he has the guilty purpose, which is essential to support a judgment confiscating property to the government based on the ground that a man is attempting and willfully endeavoring to cheat the government out of its duties.

"The opinion of Judge Brown in the case cited by the district attorney [U. S. v. Nineteen Bales of Tobacco (D. C.) 112 Fed. 779] is in a case very similar to the one now on trial, but in that case the invoice described the goods as 'thirty-nine bales of filler, bought as filler, to be sold as filler; value $2,452.' Now, I think that description itself was evidence from which a jury might infer that there was a direct representation that the tobacco was absolutely filler, that it was going to be sold as filler, and no part of it was to be sold as wrapper, and that that would be a proper case to send to the jury on the evidence afforded by the invoice alone. But it seems to me in this case that, if the jury should find a verdict for the government, there is not suffi-

cient evidence upon which it could be maintained, and it would be my duty to set it aside. I think, therefore, there should be a verdict directed in this case for the claimant."

Arthur M. King, Asst. U. S. Atty.

W. Wickham Smith (William B. Coughtry and Martin Paskus, on the brief), for claimants.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

COXE, Circuit Judge. On writ of error to review a decision of the District Court for the Southern District of New York, which directed a verdict for the defendants in an action brought by the United States for the forfeiture of 49 bales of tobacco imported at Tampa, Fla.

The information charges that the invoice and entry were false and fraudulent in that the tobacco was described therein as "leaf tobacco fillers," whereas it was in truth and in fact "wrapper tobacco." The information was laid under section 9 of the customs administration act of June 10, 1890, c. 407, 26 Stat. 135 [U. S. Comp. St. 1901, p. 1895]. That section is as follows:

"Sec. 9. That if any owner, importer, consignee, agent, or other person shall make or attempt to make any entry of imported merchandise by means of any fraudulent or false invoice, affidavit, letter, paper, or by means of any false statement, written or verbal, or by means of any false or fraudulent practice or appliance whatsoever, or shall be guilty of any willful act or omission by means whereof the United States shall be deprived of the lawful duties, or any portion thereof, accruing upon the merchandise, or any portion thereof, embraced or referred to in such invoice, affidavit, letter, paper, or statement, or affected by such act or omission, such merchandise, or the value thereof, to be recovered from the person making the entry, shall be forfeited, which forfeiture shall only apply to the whole of the merchandise or the value thereof in the case or package containing the particular article or articles of merchandise to which such fraud or false paper or statement relates; and such person shall, upon conviction, be fined for each offense a sum not exceeding five thousand dollars, or be imprisoned for a time not exceeding two years, or both, in the discretion of the court."

The statute under which the property of the defendants was seized is penal in character. Proof which is sufficient to uphold a forfeiture of the importers' property is also sufficient to justify a conviction, fine and imprisonment. Such a statute must be strictly construed. Manifestly it was not intended to apply to mistakes or errors in judgment but to acts of commission and omission, which plainly indicate a willful and culpable intent to defraud the government of its lawful revenues. Fraud, whether the action be criminal or civil, must be proved; it cannot be inferred; this is elementary. A mere mistake in the description of imported merchandise unaccompanied by acts from which an intent to defraud may be presumed is, in our judgment, insufficient to justify a forfeiture under this section. U. S. v. Ninety-Nine Diamonds (C. C. A.) 139 Fed. 961.

An examination of the record convinces us that there was no error in directing a verdict for the defendants. Our reasons for this conclusion are briefly as follows:

First. The contention of the plaintiff that the importation was fraudulent rests wholly upon the statements of the invoice and entry

that the merchandise consisted of "108 bales of leaf tobacco fillers" and "tobacco fillers," respectively. There is nothing to show that at the time of the entry the importers knew that these statements were incorrect. The testimony upon which the plaintiff relies to establish their falsity resulted from an examination of the tobacco after it had been delivered to the importers and had reached New York.

Second. The entire importation of 108 bales was delivered to the customs officers at Tampa for examination. The usual practice of sending one package in ten to the public stores, when merchandise is entered for consumption, does not obtain at Tampa where there are no public stores. The entire importation goes to the warehouse where it is examined. It is not delivered to the importers until such examination is made and the duty paid. In the present case entry was made July 25, and the tobacco was withdrawn August 2, after an examination and payment in full of the duties levied by the collector. The tobacco remained in the custody of the customs officers for a period of eight days. It must be presumed that the importers knew of the absence of public stores at Tampa and the custom there to warehouse the entire importation. It seems incredible that men of ordinary prudence and intelligence would attempt so clumsy a fraud as the one contended for by the plaintiff—a fraud that would be detected the moment the bales were examined. In such circumstances as these a finding that the description of the tobacco as "fillers" in the invoice and entry is sufficient evidence of a fraudulent purpose must rest on the assumption that the collector was either hopelessly incompetent or was in conspiracy with the importers. There is not a shadow of suspicion resting upon the collector or any of his subordinates.

Third. Every one of the bales was carefully examined at Tampa by the acting deputy collector who had been in the tobacco business before entering the customs service and was an experienced examiner. His honesty and competency have not been questioned. The result of this examination was that he returned 6 bales as wrapper tobacco, 29 bales as having a percentage of wrapper and the balance as filler. As the 29 bales contained less than 15 per cent. wrapper, duty was assessed and paid on six bales of wrappers, and on 106 bales of fillers at the lesser rate. At the trial, the examiner testified that he never made a more careful examination than the one in question. He was confident his classification was correct and he has seen no reason since to change it. He further testified that there was nothing unusual about the present entry; that the usual practice was to enter the merchandise as described in the invoice, classify it afterwards as wrapper or filler and levy duty accordingly. It was not the custom to seize merchandise so entered. In effect the importers came to the collector and said:

"We desire to pay duty on this tobacco; it is called 'filler' in the invoice, but here it is, the entire 108 bales; examine it for yourself and let us know the amount of the duty."

Where duty is paid after such an examination we fail to see how the parties paying can be charged with a fraudulent purpose to cheat the United States. If the tobacco had been entered in the precise language

of examiner McFarlane's report, namely "6 bales wrapper, 29 bales having a percentage of wrapper, less than 15 per cent. and 73 bales of filler" it would still be open to the plaintiff, upon its present theory, to seize the tobacco because it was fraudulently invoiced and entered. The testimony shows conclusively that there is a wide diversity of opinion among expert tobacconists as to the proper classification of tobacco into the two groups of wrappers and fillers, a carrot which is accepted as wrapper by one may be rejected by another. It is largely a matter of opinion and, within certain limits, it is so recognized both by the trade and the officers of the government. No two of the witnesses in the present controversy are in perfect accord.

Fourth. The tobacco was shipped to New York August 2d and was not seized until the 22d of August, during which time it remained in warehouse. Nothing was done to it during the interval; no attempt was made to hide it or dispose of it or mix it with other tobacco, and no objection was made when the customs officials asked permission to examine it. In short, from the beginning to the end of the transaction the conduct of the defendants—unless the statement in the invoice is an exception—has been the conduct of honest men, free from deception, quibbling and prevarication.

Fifth. Paragraphs 213 and 214 of the tariff act of July 24, 1897, c. 11, § 1, Schedule F, 30 Stat. 169 [U. S. Comp. St. 1901, p. 1648] impose duties upon tobacco and define the meaning of the terms "wrapper tobacco" and "filler tobacco." Under these provisions and the regulations prescribed by the Secretary of the Treasury, as required by paragraph 214, it is, at least, doubtful whether the entry in question was not absolutely correct in any view which may be taken of the proceeding.

Paragraph 214 provides that:

"The term 'wrapper tobacco' as used in this act means that quality of leaf tobacco which is suitable for cigar wrappers, and the term 'filler tobacco' means all other leaf tobacco. Collectors of customs shall not permit entry to be made, except under regulations to be prescribed by the Secretary of the Treasury, of any leaf tobacco, unless the invoices of the same shall specify in detail the character of such tobacco, whether wrapper or filler, its origin and quality."

On April 1, 1903, the Treasury Department issued instructions to collectors as follows:

"Importations of leaf tobacco will be denied entry unless the invoices specify in detail the character of such tobacco whether 'wrapper' or 'filler,' its origin or quality. When an invoice fails to state whether the tobacco is 'filler' or 'wrapper' and the bona fides are beyond question, opportunity will be given to secure a corrected invoice. Where good faith is not shown, summary action will be taken."

It would seem, therefore, that under the law as interpreted by the department, the importer was limited to a choice between the terms "wrapper tobacco" and "filler tobacco," and was not permitted to describe his importation as "mixed tobacco." If, in a case like the present, he used the term "wrapper tobacco" he would be compelled to pay the high rate of duty upon an invoice over half of which was subject to the lower rate; whereas if he used the term "filler tobacco" an

examination by the examiner would enable him to classify it properly, charging to each variety its proper share of the duties.

Upon this question the district judge aptly observes:

"Now, it seems to me that if an importer looked at this act and looked at these instructions, the natural inference for him to draw from this statute would be that in describing the tobacco in the invoice he should put it in either wrapper or filler. If it was all wrapper, he would put it in wrapper. If it was only partly wrapper, he would put it in filler, I suppose, unless he also filled in in detail the language of the act, when he might say in the invoice, 'filler tobacco mixed or packed with more than 15 per centum of wrapper tobacco. * * *' It seems to me, under these circumstances, that if a man shipping a quantity of tobacco, a portion of which is filler tobacco, mixed or packed with more than 15 per centum of wrapper tobacco, and a portion of which is filler tobacco which is not mixed with an amount equal to 15 per centum of wrapper, it is natural that he should describe it as filler, and that there is no legitimate inference to be drawn from the fact that he does describe it as filler, that he is attempting to smuggle the goods into the country."

We are clearly of the opinion that no case of forfeiture has been shown. It may be that duty on wrapper tobacco should have been paid on a larger number of bales. If so the plaintiff is still in a position to recover the correct amount.

Such controversies as this frequently arise and they should be determined by the Board of General Appraisers where justice can be done to all concerned.

To forfeit the defendants' property upon the proof shown by this record would, we think, be doing them a marked injustice.

The judgment is affirmed.