**JEN DAO CHEN, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

No. 20210.

United States Court of Appeals
Ninth Circuit.

Nov. 13, 1967.

Wayne M. Collins, San Francisco, Cal., for appellant.

William M. Byrne, Jr., U. S. Atty., Donald A. Fareed, Morton H. Boren, Larry L. Dier, Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Before CHAMBERS, POPE and JERTBERG, Circuit Judges.

POPE, Circuit Judge.

This was a proceeding brought by the United States in the court below for the purpose of procuring a forfeiture of certain objects alleged to have been imported into the United States by means of a false declaration in violation of 19 U.S.C. § 1592. Forfeiture is also claimed on the ground that the objects, hereinafter described, were brought into the United States without procuring an import license as required by a Treasury regulation (CFR Title 31, § 500.204), promulgated by the Secretary of the Treasury and which related to the importing or otherwise dealing in merchandise originating in China.

The appellant here, claimant below, Jen Dao Chen, answered the Government's libel; the case was tried to a jury which returned a verdict approving forfeiture of these objects. The objects in question are a painted silk scroll entitled "Pleasure In Fishing", an antique dating from the Sung Dynasty, (A. D. 960–1127), and a bronze tortoise, also an antique. Chen is a resident of Hong Kong. He purchased the scroll in 1946 and he purchased the bronze tortoise in the United States in 1953, and had it shipped to Hong Kong. Chen undertook to arrange for delivery of these two objects to the Boston Museum of Fine Arts with a view of possible future sale.

On March 22, 1960, in Hong Kong, Chen delivered these two objects to one Paul Yang who was about to emigrate to the United States. Yang signed a receipt for the objects. Chen instructed Yang to deliver the objects to a Mr. or Mrs. Shu in San Francisco who were to arrange delivery of the objects to the Boston Museum. Chen had exhibited these antiques to Yang and explained to him that they were art objects of considerable value. (The bronze was valued at $12,000 and the painting at from $10,000 to $12,000.) Yang was given photostatic copies of documents to show where and when Chen had purchased these items in order to enable Yang to show United States officials that they did not originate in Red China at a time which would prohibit their importation and to establish that they were nondutiable.

Yang was instructed that if the United States custom officers refused entry of the two items, Yang was to ship them back to Hong Kong C.O.D. Yang boarded the plane in Hong Kong, flew to Tokyo and then after a few hours lay-over, during which he unwrapped the packages and examined the articles, he flew on to Seattle via Anchorage. During the flight, and before reaching Seattle, an airline stewardess handed out a form

(U. S. Customs Baggage Declaration Entry Form #6063) to each of the passengers including Yang. One of the questions on the form was as follows:

"Do you have articles for sale or carried as an accommodation for others? Commercial samples?

Yes [ ] No [ ]."

Yang, with the help of a fellow passenger and an airline employee, filled out the form and placed a check mark in the "No" square.

After Yang's baggage was checked by U. S. custom officials in Seattle, he flew on to San Francisco where he was met by the Shus at the airport. However, Yang refused to hand the art objects over to them at that time. He continued to refuse delivery to the Shus during his stay in San Francisco of six months, and even after he moved to Los Angeles taking the two art objects with him. Yang stored the antiques with various friends in Los Angeles until he deposited them in a vault at the Bank of America in Hollywood. The vault receipt was made out in the name of one of Yang's friends. A jury would be warranted in inferring from this conduct that not only then but during his trip to the United States Yang had determined to steal and convert these two objects to his own use.

The claimant Chen notified officers that he had given these art objects to Yang who had not given them to the Shus as directed, and had not sent him the proceeds of their sale. On November 4, 1960, Yang was arrested in Los Angeles and the two art objects were seized. The libel of information was then filed seeking their forfeiture. The amended libel of information on which the case was tried was in two counts. The first count alleged that the painted scroll and bronze tortoise were imported in the United States by means of a false Customs Baggage Declaration and Entry Form 6063, in violation of 19 U.S.C. § 1592; the second count alleged that these art objects were imported into the United States without obtaining the specific authorization of the Secretary of the

Treasury in violation of the provisions of the regulation requiring an import license as provided in 31 C.F.R. § 500.-204. Upon trial and hearing Chen appeared as claimant and requested the giving of certain instructions hereafter referred to. The jury found in favor of the United States and forfeiture was adjudged based upon the jury's verdict.

With respect to the first count, which is based on the alleged false declaration, the principal contention of the appellant is that the court was in error in refusing to give certain instructions requested by the claimant Chen. Several such requested instructions, which were substantially the same in meaning, were offered and rejected by the court. Requested Instruction No. 17(a) is fairly representative of these refused instructions. It reads as follows:

"You are instructed that if you find that Paul C. Yang was entrusted by the claimant Jen Dao Chen to bring the 'Bronze Tortoise' and the painting entitled 'Pleasure in Fishing' to the United States and deliver them to Mrs. C. Y. Shu in San Francisco, he became the agent of the owner Jen Dao Chen for such purpose at the time the goods were delivered to him. If you also find that after receiving the two articles from him the said Paul C. Yang stole, embezzled or converted the two art objects to his own use and deprived Jen Dao Chen thereof prior to the entry of the two articles into the United States he then and thereby abandoned his agency and ceased to be the agent of Jen Dao Chen and thereafter acted for himself and if he thereafter brought the articles into the United States in violation of any laws of the United States, he alone was responsible for such violations and his unlawful acts do not constitute a cause for the forfeiture of the two articles of the claimant Jen Dao Chen whom you must then find entitled to have the two art objects restored to him."

In our view such an instruction should have been given. Under the evidence the jury might have found that

Yang in this case had embezzled and converted the two art objects to his own use prior to their entry in the United States. In such case Yang would have abandoned the agency and § 1592 could not be construed to permit forfeiture as against the owner of the objects for acts performed by one who is in no better position with respect to the objects than that of a mere trespasser. The case of United States v. 1,150½ Pounds of Celluloid, 6 cir., 82 F. 627, dealt with a prior statute with provisions substantially the same as those in § 1592. The court there held that forfeiture could only be decreed for the acts of "some person having a relation to the owner, and for whose conduct, in respect to his merchandise, he may be responsible." (82 F. 635, 636.) In that case an employee of the owner of the celluloid proceeded, without the knowledge or consent of his employer, illegally to bring the merchandise into the United States. The court said (p. 634): "From the cases already cited it most clearly appears that under the act of 1874, as well as under the collection acts antecedent, a forfeiture was never declared of the goods of an owner unless there was an actual intent upon the part of the owner, or those under whom he claimed, or his authorized agent, to defraud the revenue; and the merchandise of an owner was not subjected to forfeiture by the acts and conduct of a mere stranger and trespasser."

Here, in the case before us, there was evidence to the effect that even as to Yang himself he was not sufficiently proficient in the use of the English language to understand thoroughly the questions on the declaration of entry form. The jury might have found that Yang thought the document he had signed was a questionnaire provided not by the Government but by the airline for its advice and information. The jury might have found that Yang did not intend to make a false statement to the Government and that his answer was a mistake based on inability to understand the language.

The appellant offered an instruction No. 11 stating in substance that if Yang was not sufficiently proficient in English to understand the question and if he did not intend to make any false statement and gave an incorrect answer by mistake the goods were not forfeitable. The Government objected to the instruction on the ground that "mistake does not appear to be a defense to forfeiture actions of this nature, also this is only one of the grounds alleged by claimant as a basis for forfeiture."

■ We are of the opinion that § 1592 does make intent to use fraudulent means essential to forfeiture. It refers to one who "makes any false statement in any declaration * * * without reasonable cause to believe the truth of such statement * * *." Such was the holding under substantially the same statutory provisions in United States v. One Silk Rug, 3 cir., 158 F. 974; and see also United States v. 75 Bales of Tobacco, 2 cir., 147 F. 127.

■ It was error for the court to refuse the appellant's requested Instruction No. 11. For these errors in rejecting proper instructions the judgment of forfeiture on account of the matters alleged in the first count of the libel must be reversed and the cause remanded for a new trial with respect to that count.

■■ The second count upon which forfeiture was claimed was based upon the failure of either Chen or Yang to comply with the requirements of the Treasury regulation above referred to, 31 C.F.R. § 500.204. That regulation provides as follows: "Except as specifically authorized by the Secretary of the Treasury * * * no person subject to the jurisdiction of the United States may purchase * * * or otherwise deal in or engage in any transaction with respect to any merchandise outside of the United States. * * *" It seems very clear that this regulation is not applicable in this case. Both Chen and Yang were citizens and residents of Hong Kong. When Yang's trip started, it is plain that neither he nor Chen was "a person subject to the jurisdiction of the United

States."[1] At the trial the Government asserted that when Yang reached Seattle he became a person subject to the jurisdiction of the United States. However, that does not make the regulation applicable because at that time the merchandise involved was not "merchandise outside the United States." As sought to be applied here the regulation read in connection with the statute (§ 5 of Trading With the Enemy Act, 50 U.S.C. App. § 5) is highly penal and as such falls within the general rule which requires a strict construction. United States v. Celluloid, supra, 82 F. p. 634.

It is thus plain that the Government cannot base any forfeiture upon a violation of this regulation since by its terms the regulation cannot be applied here. That part of the judgment of the court which is based upon count 2 of the libel must be reversed with directions to dismiss the same.

The judgment is reversed. That portion of the proceeding based upon Count 1 is remanded for a new trial. The portion based upon Count 2 is remanded with directions to dismiss the same.

---

1. 31 C.F.R. § 500.329 defines "person subject to the jurisdiction of the United States" to include: "(1) Any person, wheresoever located, who is a citizen or resident of the United States; (2) Any person actually within the United States.

* * *" And § 500.330 defines a "Person within the United States" to include: "Any person, wheresoever located, who is a resident of the United States; (2) Any person actually within the United States. * * *"