45 F.3d 436
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 INTERMOUNTAIN RANCHES, LTD.; Melvin H. Gardner; Belva H.
Gardner; Lee C. Atkin; George L. Gardner,
Plaintiffs-Appellants,
v.
UNITED STATES of America, Mike Espy,**
Secretary of Agriculture of the United States of
America, et al., Defendants-Appellees.
 No. 93-15944.
 United States Court of Appeals, Ninth Circuit.
 Submitted Dec. 14, 1994.*
Decided Dec. 21, 1994.
 
 1
 Before: TANG, REINHARDT, and RYMER, Circuit Judges
 
 
 2
 MEMORANDUM***
 
 
 3
 Intermountain Ranches had a permit to graze sheep on federal lands which the Forest Service revoked for failure to comply with the conditions of the permit. Intermountain appealed this decision, and lost, through two levels of administrative review and the district court. We have jurisdiction under 21 U.S.C. Sec. 1291, and affirm.
 
 
 4
 * The Forest Service found that Intermountain had violated four separate conditions of the permit. The permit itself, and Department of Agriculture regulations, allow the Forest Service to cancel a national forest grazing permit for violation of the conditions of the permit. Intermountain argues that none of the conditions was substantially violated, and that the Forest Service failed to comply with the cancellation procedures outlined in its handbook.
 
 
 5
 Intermountain's permit incorporated the "allotment management plan," which required it to notify the Forest Service five days before Intermountain intended to move stock onto the grazing lands. Intermountain admits that it "technically" violated this provision, but argues that the Forest Service was not prejudiced. There is no requirement, however, that permit violations prejudice the Forest Service before they justify cancellation.
 
 
 6
 Intermountain's permit also required it to graze at least 90% of its allotted stock, or obtain consent to a lower number. Intermountain was cited for failure to comply with this requirement in 1987 and 1990. Intermountain argues that its stocking failure in 1990 was justified by a Forest Service letter which warned that due to drought, it might be necessary to reduce the number of sheep grazing on the allotted land. The letter, however, merely warned Intermountain of a contingency; it did not authorize reduced grazing without securing approval. In any event, the letter did not excuse Intermountain's failure to graze 90% of its allotment in 1987.
 
 
 7
 Only sheep "branded as shown in the Application" may be grazed on government land, according to Intermountain's permit. The Forest Service found that Intermountain was grazing sheep under multiple brands, while only one had been listed in its application. Intermountain argues that its application was supplemented to reflect additional brands; however, that did not occur until after the Forest Service's citation for grazing sheep with unauthorized brands.
 
 
 8
 Intermountain's permit prohibits the leasing or subletting of the permit, and requires Intermountain to "immediately notify the Forest office in charge of any change in control of base property." Intermountain violated the no-lease provision when it leased its flock, property, and the right to graze sheep on Intermountain's "U.S. Forest permits" on October 1988. By waiting over two years before notifying the Forest Service of that change in control of the base property, Intermountain also violated the notification requirement. Intermountain argues that because the lease requires compliance with all laws and regulations concerning the sheep, it is void by its terms if it violates a Forest Service regulation. In essence, Intermountain claims that if the lease violates the permit, then it does not violate the permit because the lease is then void. Intermountain is confused. They cannot use the fact that the lease violates the permit as a defense to violating the permit.
 
 II
 
 9
 Intermountain claims that the Forest Service did not comply with its own handbook, which expresses a preference for permit suspension rather than termination, and states that cancellation is seldom justified for first offenses. Even if the handbook were enforceable, but see United States v. Fifty-Three Eclectus Parrots, 685 F.2d 1131, 1135-36 (9th Cir.1982) (Customs manual not enforceable since it was meant only for internal use), the Forest Service did not run afoul of its handbook because Intermountain's violations were numerous and prolonged.
 
 
 10
 Accordingly, the district court correctly determined that the Forest Service's actions were not arbitrary and capricious. Western Energy Co. v. Department of Interior, 932 F.2d 807, 809 (9th Cir.1991).
 
 
 11
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 Pursuant to Fed.R.App.P. 43(c)(1), Mike Espy is substituted for Edward Madigan, former Secretary of Agriculture
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3