Erma J. JAMES, Petitioner–Appellant,

v.

UNITED STATES PAROLE COMMIS-SION, Respondent–Appellee.

No. 97–10420.

United States Court of Appeals, Ninth Circuit.

Submitted Oct. 5, 1998. *

Decided Nov. 3, 1998.

---

* This panel unanimously agrees that this case is appropriate for submission without oral argument. Fed. R.App. P. 34(a); 9th Cir. R. 34–4.

Robin Packel, Federal Public Defenders, San Francisco, California, for petitioner-appellant.

Richard K. Preston, United States Parole Commission, Chevy Chase, Maryland, for respondent-appellee.

Before: BEEZER, HALL, and RYMER, Circuit Judges.

CYNTHIA HOLCOMB HALL, Circuit Judge:

Petitioner Erma J. James challenges the U.S. Parole Commission's decision to deny Ms. James a two-level downward adjustment for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. Ms. James had been convicted by a Mexican court for smuggling 1.8 kilograms of heroin into that country. She was transferred to the United States pursuant to a prisoner exchange treaty with Mexico, and the Commission calculated her release date pursuant to 18 U.S.C. §§ 4106A(a)-(b). We have jurisdiction to review the Commission's determination under 18 U.S.C. § 4106A(b)(2)(A), and we affirm.

I

On May 18, 1996, Mexican authorities detained petitioner at Benito Juarez International Airport in Mexico City, Mexico as she deplaned from a KLM flight from Amsterdam, Holland. The flight was the final leg of a roundtrip journey from Mexico City to Nairobi, Kenya and back, with stopovers in Amsterdam. The Mexican officers suspected Ms. James of criminal activity in part because she "walked very quickly while looking in various directions," and because the "insoles [of her shoes] were of an unusual shape."

Upon further examination, the Mexican authorities discovered that each of Ms. James' insoles contained a package of what appeared to be heroin. The officers also discovered two similar packages secreted in Ms. James' bra and two packages in her girdle. The combined weight of the packages totalled 1.8 kilograms. The Mexican authorities tried and convicted Ms. James of the illegal importation of an illegal substance (heroin), in violation of Articles 193 and 194 of the Federal Criminal Code and Articles 234, 235, 245, 247, and 248 of the General Health Act.

At Ms. James' trial in Mexico, the arresting officers testified that Ms. James' clothing that contained the heroin was heavier than normal, with the girdle and bra having dark patches sewn on to them. Ms. James testified in her own defense, claiming that she did not know that her clothing contained heroin until the officers cut open the garments with a knife to reveal the contraband. Petitioner stated that four men had approached her on the streets of San Diego, California, and had given her the bra, girdle, and shoes as a gift before she had left the United States. These men had also offered her the airline tickets. Apparently, Ms. James had not previously met these men, but she gratefully accepted their presents, which she understood to be from "1–800 where everything is free ... even the plane ticket had a special code that read 'free of cost.'"

In convicting Ms. James, the Mexican court discounted Ms. James' testimony because:

> The defendant's statement lacks credibility and is insufficient to refute the charges.... [H]er contention that she did not notice anything abnormal in the garments is successfully refuted by the agents' statements that they all were heavier than normal.... [H]er explanation of how she received the tickets and the garments is not believable. Finally, the testimony concerning her suspicious behavior at the airport has not been challenged.

Ms. James did not appeal her Mexican conviction and applied for a transfer to the United States pursuant to a prisoner exchange treaty between the United States and Mexico. *See* Treaty on the Execution of Penal Sentences, Nov. 25, 1976, U.S.-Mexico, 28 U.S.T. 7399. In her interview with a U.S.

probation officer preparing her presentence investigation report, Ms. James explained that she had actually met three men who gave her the clothing and plane tickets at a party in San Diego.[1] These men invited her to spend two weeks in Mexico and two weeks in Africa. She travelled to Mexico, where the men took her shopping for underwear. She then travelled to Nairobi via Amsterdam, taking in a short safari before a man called her saying she needed to cut her trip short because of a death in the family.[2] While in Amsterdam, Ms. James explained that she was paged and told to put on the clothing the men had bought for her, and to not call home or else there would be "trouble." Ms. James followed these instructions, and was later apprehended upon her arrival in Mexico. The presentence investigation report recommended that Ms. James not receive a reduction in her offense level for acceptance of responsibility because she denied knowledge of the drugs, saying that she did not know that drugs were sewn into her underwear.

The hearing examiner rejected the report's recommendation, and granted Ms. James' request for a two-point reduction for acceptance of responsibility because she had accepted and did not appeal her Mexican conviction. The Parole Commission's General Counsel questioned the examiner's finding. The General Counsel agreed that petitioner might qualify for this reduction if she frankly accepted responsibility for the offense of conviction, but noted that Ms. James' version of events would "preclude[ ] any degree of criminal responsibility whatsoever," and that the mere acceptance of her conviction (and not the offensive conduct constituting the conviction) was not therefore sufficient to qualify for the reduction. The General Counsel noted that Ms. James' claim that four unknown men whose names she could not recall bought her clothing and airline tickets as gifts was incredible. The General Counsel was also troubled by the fact that

Ms. James would not admit that she was recruited to be a drug courier, would not disclose how much she was to be paid, would not disclose who introduced her to the four men, and would not even provide the first name of her husband, who was also suspected of involvement in the drug ring. Because of Ms. James' failure to admit her crime and accept "some share of personal responsibility for the offense," and because of her "stonewalling," the General Counsel recommended that she not receive the two-point reduction for acceptance of responsibility. A subsequent examiner and two national commissioners agreed with and adopted this recommendation.

## II

### A

■ We review the Parole Commission's interpretation of the sentencing guidelines and interpretation of law *de novo*. *See Kleeman v. United States Parole Comm'n*, 125 F.3d 725, 730 (9th Cir.1997). "Whether a defendant is entitled to an adjustment based on acceptance of responsibility is a factual determination reviewed for clear error." *United States v. Villasenor–Cesar*, 114 F.3d 970, 973 (9th Cir.1997).

■ Ms. James may not challenge the validity of her Mexican conviction in a U.S. court because she was transferred to the United States pursuant to a prisoner exchange treaty. *See* Treaty on the Execution of Penal Sentences, Nov. 25, 1976, U.S.-Mexico, 28 U.S.T. 7399; *see also Pfeifer v. United States Bureau of Prisons*, 615 F.2d 873, 876–77 (9th Cir.1980) (underlying conviction cannot be challenged in a transfer treaty situation).

Congress has explicitly provided by statute that the U.S. Parole Commission shall calculate a release date for all prisoners transferred pursuant to prisoner exchange treaties, and that in so doing, the Commission

---

1. Ms. James had told the Mexican court that four men whom she met on the street had given her these gifts.

2. This statement appears to be inaccurate. A letter from the airline KLM to the Parole Commission indicates that the original ticket purchased for Ms. James called for a return trip only four days after she arrived in Kenya, suggesting that her trip was not cut short but had always been scheduled to last for such a brief period.

shall consider recommendations of the U.S. Probation Service and any documents provided by the transferring country. *See* 18 U.S.C. § 4106A(b)(1). The Courts of Appeals are to "decide and dispose of the appeal ... as though the determination appealed had been a sentence imposed by a United States district court." 18 U.S.C. § 4106A(b)(2)(B); *Ajala v. United States Parole Comm'n,* 997 F.2d 651, 654 (9th Cir.1993).

### B

■ Ms. James argues that she may receive a reduction for acceptance of responsibility despite the fact that she denied any knowledge of the drugs she carried into Mexico, refused to provide the first name of her husband to the authorities, and failed to tell authorities who introduced her to the heroin traffickers. She also claims that her repeated denials that she did not know that she was carrying heroin do not conflict with her acceptance of her Mexican conviction because that conviction did not require a showing that she knowingly carried the heroin into Mexico.

U.S.S.G. § 3E1.1 provides that "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels." U.S.S.G. § 3E1.1(a). The application notes state that while the sentencing authority should consider whether the defendant truthfully admitted "the conduct comprising the offense[ ].... [A] defendant is not required to volunteer, or affirmatively admit, relevant conduct beyond the offense of conviction in order to obtain a reduction." *Id.* at application note 1(a); *see Stinson v. United States,* 508 U.S. 36, 38, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993) (holding that interpretative commentary of the Sentencing Guidelines is authoritative unless it violates the Constitution, a federal statute, or is inconsistent with the guideline itself). Importantly, "a defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility." U.S.S.G. § 3E1.1 application note 1(a). This Court has explained that "a defendant has the right to remain silent regarding relevant, uncharged conduct; but, once he relinquishes that right and falsely denies such conduct, the district court may weigh the false denial in considering a reduction for acceptance of responsibility." *United States v. Rutledge,* 28 F.3d 998, 1002 (9th Cir.1994).

■ Moreover, "[t]he primary goal of the reduction [for acceptance of responsibility] is to reward defendants who are genuinely contrite." *United States v. McKinney,* 15 F.3d 849, 853 (9th Cir.1994). Courts should consider, among other factors, whether the defendant truthfully admitted the elements of the offense. *See United States v. Flores,* 93 F.3d 587, 590 (9th Cir.1996). Even the entry of a guilty plea, however, is not sufficient to qualify for the reduction if the defendant shows no remorse. *See id.*

Ms. James correctly argues that she need not confess to unproved, uncharged conduct to qualify for the acceptance of responsibility reduction; she need only express contrition for the crime of conviction. *See* U.S.S.G. § 3E1.1 application note 1(a); *United States v. Piper,* 918 F.2d 839, 840–41 (9th Cir.1990) (per curiam).

But while Ms. James does not have to affirmatively admit related, uncharged conduct, she cannot affirmatively deny it either if the Commission finds the denial to be false. *See* U.S.S.G. § 3E1.1 application note 1(a). Here Ms. James' "stonewalling" behavior, her claimed lack of knowledge that she was carrying drugs, and her unsatisfactory explanation for her receipt of the airline tickets and clothes all demonstrate that Ms. James did not accept responsibility for her actions. The inconsistencies between her testimony before the Mexican court and her conversations with the probation officer only emphasize this fact. As the Commission's General Counsel noted, Ms. James' "version of the facts ... precludes any degree of criminal responsibility whatsoever." After a full review of the record, we cannot say that the Commission clearly erred in finding that Ms. James did not qualify for an acceptance of responsibility adjustment. The affirmative denials of her guilt and related conduct precluded Ms. James from receiving the respon-

sibility deduction.[3] *See id.; Rutledge,* 28 F.3d at 1002.

## III

■ Ms. James also argues that the Parole Commission erred because it failed to follow its own internal guidelines governing the computation of release dates in prisoner transfer cases. She claims that this failure made the Commission's acceptance of responsibility findings arbitrary and capricious, resulting in a denial of due process.

Courts have held that the Parole Commission must follow its governing regulations. *See Vargas v. United States Parole Comm'n,* 865 F.2d 191, 193 (9th Cir.1988); *Wallace v. Christensen,* 802 F.2d 1539, 1552 n. 8 (9th Cir.1986) (en banc). Those cases, however, concerned regulations that were officially promulgated and codified in the Code of Federal Regulations. *See Vargas,* 865 F.2d at 193–94; *Wallace,* 802 F.2d at 1546.

The internal guidelines in this case were not so issued, and appear to be for internal use only. The specific provision Ms. James relies on provides:

> [I]f the transferring country is a country with procedures similar to Mexico [i.e., that does not allow guilty pleas]—
>
> . . . .
>
> (B) A defendant who has not cooperated with the foreign authorities by providing self-incriminating information will nonetheless qualify for a 2–level adjustment for acceptance of responsibility under § 3E1.1(a) if the defendant, upon return to the United States, promptly accepts responsibility for his offense(s) of conviction (even if only because the law and treaty require it) and there are no countervailing circumstance(s) warranting denial of this adjustment. Such a defendant, however, is not eligible for a 3–level adjustment under § 3E1.1(b).

United States Parole Comm'n Transfer Treaty Cases—Supp. Instructions for Application of Sentencing Guidelines § 3E1.1 application note 3.

It is well settled that internal policy manuals of federal agencies do not generally create due process rights in others. *See Schweiker v. Hansen,* 450 U.S. 785, 789, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981) (per curiam) (holding that failure of government employee to follow 13 volume internal agency manual did not provide a basis of estoppel against the government); *Coleman v. Perrill,* 845 F.2d 876, 879 (9th Cir.1988) (internal U.S. Parole Commission manual provision was not a requirement, but merely a precatory aspiration); *United States v. Fifty–Three (53) Eclectus Parrots,* 685 F.2d 1131, 1136 (9th Cir.1982) (provision in internal U.S. Customs manual did not have the force of law and could not be asserted against the government).

In *Eclectus Parrots,* the court noted that "[n]ot all agency policy pronouncements which find their way to the public can be considered regulations enforceable in federal court." *Eclectus Parrots,* 685 F.2d at 1136 (quoting *Rank v. Nimmo,* 677 F.2d 692, 698 (9th Cir.1982) (quoting *Chasse v. Chasen,* 595 F.2d 59, 62 (1st Cir.1979))). The court held that:

> To have the force and effect of law, enforceable against an agency in federal court, the agency pronouncement must (1) prescribe substantive rules-*not* interpretive rules, general statements of policy or rules of agency organization, procedure or practice—and, (2) conform to certain procedural requirements. To satisfy the first requirement the rule must be legislative in nature, affecting individual rights and obligations; to satisfy the second, it must have been promulgated pursuant to a specific

---

**3.** Because petitioner falsely denied relevant conduct, we need not reach petitioner's argument that Mexican law does not require a finding that petitioner knowingly carried heroin into Mexico, and that her repeated denials that she did not know she was carrying drugs did not therefore constitute a failure to fully accept her Mexican conviction. We would note, however, that Mexican law does state that a person may be convict-

ed of a crime only if he or she acts willfully or culpably. *See* C.P.D.F. Art. 8 (1996). In addition, the Mexican court found that "a willfull [sic] violation of the law on the part of ERMA J. JAMES has been demonstrated." This would suggest that Ms. James' repeated denials of knowledge of the heroin she was carrying did constitute a failure to fully accept her Mexican conviction.

statutory grant of authority and in conformance with the procedural requirements imposed by Congress.

*Id.* (internal quotations and citation omitted).

In *Coleman,* the court held that a provision of the U.S. Parole Commission's internal handbook was merely precatory and aspirational. As a result, the failure of the Commission to follow the provision did not constitute a violation subject to review by the court. *See Coleman,* 845 F.2d at 879. While the provision at issue in the instant case cannot be described as aspirational, it certainly qualifies as an interpretive rule intended to guide the Commission in its calculation of release dates consistent with the Sentencing Guidelines. *See Eclectus Parrots,* 685 F.2d at 1136. As a result, Ms. James cannot rely on the internal statement because it was not intended to have the force of law, but was instead used only as an interpretive, procedural rule to guide Commission practice. *See id.*

 Petitioner also requests a remand because the Commission did not fully comply with another internal guideline that required the hearing examiner to warn Ms. James that if she continued to contest the conduct which was necessarily the basis of the foreign conviction she would not qualify for an acceptance of responsibility adjustment. Insofar as the hearing examiner did not comply with this provision, there was no due process violation. The provision was an internal interpretive provision which does not have the force of law. *See id.*

## IV

For the foregoing reasons, the decision of the U.S. Parole Commission is AFFIRMED.