TALLMAN, Circuit Judge,
dissenting:
The alien, a convicted killer who illegally re-entered the United States after his pri- or deportation, has once again been removed after the district court dismissed his 2008 criminal re-entry charge because the 1997 removal order was technically flawed. Congress has by statute strictly limited what process is due to a petitioner who re-enters after a prior deportation. Our court sitting en banc has carefully limited the scope of our review of reinstated removal orders. See generally Morales-Izquierdo v. Gonzales, 486 F.3d 484 (9th Cir.2007) (en banc). My colleagues in the majority nonetheless create a new procedural rule by judicial legislation, which the Supreme Court has held we may not do.
The majority holds that whenever the United States chooses to criminally prosecute an alien who unlawfully entered the country and fails in that prosecution, an immigration officer — who has already complied with all of the statutory and regulatory requirements for reinstatement of a prior removal order — must give the alien a new opportunity to implore the officer to decline reinstatement and instead open new removal proceedings. It might be a perfectly sensible rule if Congress or the agency prescribed it. But neither Congress nor the agency has done so. Instead, the majority’s new rule has only one source: the whole cloth from which the majority has woven it.
The Supreme Court has told us it is “improper simply to impose deportation procedures.... because the reviewing court may find them preferable.” Landon v. Plasencia, 459 U.S. 21, 35, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982). In an effort to impose its preferred procedures into ICE’s process for reinstatement of removal orders, the majority has distorted constitutional due process requirements and undercut controlling en banc precedent. I respectfully dissent.
I
In 1997, the government removed Alejandro Israel Villa-Anguiano (‘Villa”) after *883 he finished serving his sentence for voluntary manslaughter. Villa does not dispute that he was the alien subject to that removal order. Nor does he dispute that in 2001, he knowingly re-entered the country without permission and remained until he was apprehended on May 3, 2008. And he cannot dispute that the government provided him with notice and an opportunity to be heard regarding the reinstatement of his prior removal order — an opportunity he waived on May 4, 2008, when he signed underneath a checked box stating, “I do not wish to make a statement contesting this determination.”
The majority concedes that as of that date, the government needed no more to exercise its discretion to reinstate his pri- or order of removal and summarily deport him from the United States. However, the immigration officer could not remove Villa immediately because the United States opted to prosecute Villa for criminal re-entry under 8 U.S.C. § 1326. The majority now holds that when the government chose to criminally prosecute Villa and the district court later dismissed the charge after Villa brought a collateral attack on the 1997 removal order, this created a new requirement that the immigration officer give Villa yet another opportunity to be heard. The officer must, extend this opportunity, says the majority, not so that Villa may contest his eligibility for reinstatement, but rather so that he may argue the agency should exercise its prosecutorial discretion to instead open new removal proceedings. The majority must concede this requirement has no basis in either statutory or regulatory law. But it concludes ICE nonetheless abused its discretion and remands so the agency must reconsider its prosecutorial decision, even though Villa is long gone.
The reinstatement statute requires the Department of Homeland Security to do nothing more to reinstate the removal order that Villa knowingly flaunted. In 8 U.S.C. § 1231(a)(5), Congress “explicitly insulate[d] the removal orders from review!] and generally foreclose^] discretionary relief from the terms of the reinstated order.” Fernandez-Vargas v. Gonzales, 548 U.S. 30, 35, 126 S.Ct. 2422, 165 L.Ed.2d 323 (2006). The statute provides in no uncertain terms:
If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.
8 U.S.C. § 1231(a)(5).
The Department of Homeland Security has promulgated 8 C.F.R. § 241.8 to implement the reinstatement statute. Under the regulation, the immigration officer who issues the reinstatement order must analyze three criteria.
First, the officer must confirm that the alien has been subject to a prior order of removal. 8 C.F.R. § 241.8(a)(1). This requires the officer to obtain the prior order, which the officer in this case did.
Second, the officer must confirm the identity of the alien — that is, make sure that the person in question and the alien who was previously removed are in fact one and the same. Id. § 241.8(a)(2). Villa does not dispute that the officer did this too.
Third, the officer must confirm that the alien “unlawfully reentered the United *884 States.” To do this, the officer must “consider all relevant evidence” and attempt to verify any claim that the alien “was lawfully admitted,” including a check of any databases available to the officer. Id. § 241.8(a)(3). Villa, of course, made no such claim, and how could he? Subject to a removal order that required him to stay outside of the United States, Villa nonetheless surreptitiously re-entered the country. He did so without the permission of the United States government. He therefore reentered the country “unlawfully.”
The district court proceedings could not render Villa’s reentry “lawful.” The district court had jurisdiction only to determine whether Villa’s re-entry was criminal, not whether it was lawful. The district court’s conclusion that Villa did not commit a new crime in no way alters the inquiry for the immigration officer conducting a reinstatement, which is simply: did this alien violate a removal order when he entered the United States? The answer unquestionably is yes. Villa unlawfully re-entered the United States. If the agency decides he must go, then he must go.
Therefore, both the laws enacted by Congress and the Department of Homeland Security’s permissible construction of those laws allowed the immigration officer to reinstate Villa’s prior order of removal, regardless of whether the district court concluded that Villa’s re-entry also constituted a federal crime. On the limited review we may conduct of a reinstatement proceeding, this suffices to deny relief. Morales-Izquierdo, 486 F.3d at 491.
II
The majority implicitly agrees that under the law as it currently stands, Villa is eligible for reinstatement. My colleagues must acknowledge that although a district court may determine that a removal order does not validly support a criminal prosecution, that same court has no jurisdiction to grant relief from an administrative order of removal. The majority also knows that under our en banc decision in Morales-Izquierdo v. Gonzales, we do not allow aliens who have defied removal orders and re-entered the United States to put themselves in a better position than aliens “who respect our laws and wait patiently outside our borders seeking lawful admission.” 486 F.3d at 498. So without any statutory or regulatory foundation to grant relief, the majority falls back on a dubious procedural due process analysis.
If I understand the majority argument, it proceeds in three steps. First, the immigration officer has the discretion to choose to initiate new removal proceedings instead of reinstatement, even if the alien is, by statute, already susceptible to immediate reinstatement. Second, if the district court dismisses the criminal charge for illegal re-entry because the alien demonstrated fundamentally unfair infirmities in the original deportation order, the immigration officer may be more likely to start new removal proceedings instead of choosing reinstatement. Therefore, if the alien succeeds in his defense to the criminal charge, the Due Process Clause now requires the immigration officer to give the defendant yet another opportunity to be heard- — -not to argue that the alien is ineligible for reinstatement (because 8 U.S.C. § 1231(a)(5) and 8 C.F.R. § 241.8 both say Villa clearly is eligible), but to instead argue that new removal proceedings would be the more sensible exercise of the agency’s prosecutorial discretion.[1]
*885 One very important analytical step is missing: the majority provides next to no analysis regarding why the Due Process Clause compels such a result. . Sure, the majority affords us a cursory citation to Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), a case governing the interest in Social Security benefits, “a statutorily created ‘property’ interest.” Id. at 332, 96 S.Ct. 893. But it provides no case telling us why the Due Process Clause requires that an agency must provide an alien the opportunity to tell the agency how it should exercise its prosecutorial discretion.
Although aliens are entitled to due process of law, they “must in the first instance possess a liberty or property interest.” Valencia-Alvarez v. Gonzales, 469 F.3d 1319, 1330 n. 13 (9th Cir.2006). Although we have considered aliens to have such an interest when they are eligible for discretionary relief from removal, we certainly have never held they have any liberty or property interest in how an agency exercises its purely discretionary decision on whether to prosecute. “[A]n agency’s decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency’s absolute discretion.” Heckler v. Chaney, 470 U.S. 821, 831, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985). This common-sense conclusion derives from the steadfast principle that even citizens are not “entitled to judicial oversight or review of the decision to prosecute.” Albright v. Oliver, 510 U.S. 266, 274, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (quoting Gerstein v. Pugh, 420 U.S. 103, 114, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975)). Just as a criminal suspect has no procedural due process right to a hearing before a prosecutor to argue for a more lenient charge, Villa possesses no right to plead for any more than the law provides. This is a fundamental separation of powers issue, which the majority ignores when declaring remand is nonetheless required because the agency somehow abused its absolute discretion.
“While aliens have a right to fair procedures, they have no constitutional right to force the government to re-adjudicate a final removal order by unlawfully reentering the country.” Morales-Izquierdo, 486 F.3d at 498. In a reinstatement proceeding, “an alien’s rights and remedies are severely limited.” Id. at 497. Villa possesses no fewer rights today, having had his removal order reinstated, than he did the day he unlawfully re-entered the country because “[t]he reinstatement order imposes no civil or criminal penalties, creates no new obstacles to attacking the validity of the removal order, and does not diminish petitioner’s access to whatever path for lawful entry into the United States might otherwise be available to him under the immigration laws.” Id. at 498 (citations omitted).
Those laws grant Villa no entitlement to new removal proceedings. Perhaps Villa would possess a more concrete interest if the agency’s regulations in any way spelled out this discretion which the majority insists the agency regularly practices.[2] Yet *886 the majority cites no statute or regulation that delineates the criteria by which the agency must exercise its prosecutorial discretion specifically in the context of reinstatement-or that specifies how Villa’s successful defense at his criminal trial should impact that discretionary administrative decision whether to once again remove him. The majority instead misleadingly cites to the requirement in 8 C.F.R. § 241.8(a)(3) that the immigration officer “consider all relevant evidence,” when it can easily ascertain that the regulation only requires the officer to consider all evidence relevant to determining whether the alien unlawfully reentered the country — which Villa unquestionably did. The district court’s conclusion in sustaining his challenge to the criminal indictment was irrelevant to that administrative determination.
To the extent the majority relies on an internal ICE memorandum — which does not specifically address reinstatement— “[i]t is well settled that internal policy manuals of federal agencies do not generally create due process rights in others.” James v. U.S. Parole Comm’n, 159 F.3d 1200, 1206 (9th Cir.1998). The memorandum itself explains that “there is no right to the favorable exercise of discretion by the agency,” and therefore the memorandum cautions that it “may not be relied upon to create any right or benefit, substantive or procedural.” Memorandum from John Morton, Director, ICE, on Exercising Prosecutorial Discretion Consistent with the Civil Immigration Enforcement Priorities of the Agency for the Apprehension, Detention and Removal of Aliens, at 6 (June 17, 2011).[3]
The standards that are actually set out in regulatory and statutory law establish that when ICE reinstates an alien’s removal order, the alien only possesses an interest in how the ICE officer resolves three questions: (1) whether the alien was subject to a prior order of removal; (2) whether this alien is the alien described in that order; and (3) whether the alien illegally re-entered the country. On May 4, 2008, when he waived his opportunity to be heard, Villa and the agency possessed all of the information that would be relevant to those three determinations. His opportunity to be heard, at that time, could not have been more meaningful.
The majority agrees that Villa meets all of the requirements for reinstatement of a removal order under current statutory and regulatory law and that he waived his opportunity to contest whether those requirements were met. So how could the agency have abused its discretion by complying with federal law? Regardless of the answer, we lack jurisdiction to review an abuse of discretion argument that is merely recharacterized as a due process argument, Torres-Aguilar v. INS, 246 F.3d 1267, 1271 (9th Cir.2001) — precisely what the majority opinion does.[4]
*887 To hold that Villa has a liberty interest in any determination other than whether he unlawfully re-entered the United States in defiance of a removal order would “create a new and wholly unwarranted incentive for aliens who have previously been removed to reenter the country illegally in order to take advantage of this self-help remedy.” Morales-Izquierdo, 486 F.3d at 498. Because there is no foundation in our due process jurisprudence to hold that an alien possesses such a right, I cannot join a majority opinion that so casually accords this newly minted right to Villa.
Even if such a liberty interest existed, an alien bears the burden of proving the alleged violation prejudiced his or her interest. Cano-Merida v. INS, 311 F.3d 960, 965 (9th Cir.2002). Because Villa failed to make this due process argument in his briefing — which the majority has chosen to excuse and make for him — he made no showing of prejudice. But the majority argues that prejudice exists because the agency “quite possibly would have exercised its discretion not to pursue reinstatement of Villa’s 1997 removal order.” Majority Op. at 882.
This assertion opens Pandora’s box. Let us not forget that as he stands today, Villa — who committed a serious felony offense involving the taking of a life — cannot be criminally prosecuted for re-entering the United States. He can enter the country illegally as he pleases, and under his current removal order, the only thing the United States government can do is reinstate that order of removal and deport him again. It is highly unlikely that in any new removal proceedings, the agency would grant discretionary relief to a convicted killer who also ignores prior deportations by returning illegally. It is far more likely that Villa would be removed once again, but this time with a new removal order that would carry heavy criminal consequences for his next re-entry. Although Villa has no right to insist on such a proceeding, the majority has overstated the damage, if any, that the reinstatement of Villa’s removal order has caused to his interests.
Ill
The majority concedes a point that should be absolutely clear: on remand, ICE has absolutely no obligation to reach a different result. Although by now the government has surely recognized it cannot punish Villa with anything more than deportation, it may, under 8 U.S.C. § 1231(a)(5) and 8 C.F.R. § 241.8, reinstate his prior order of removal because Villa meets each of the statutory and regulatory requirements for reinstatement.
The majority opinion amounts to no more than a thinly veiled suggestion, cloaked in the mantle of due process, that ICE reconsider its decision to reinstate the prior removal order and instead open new removal proceedings from which years of litigation will ensue. Perhaps that would be the most sensible course of action, so that next time Villa would have no technical defense to a new felony conviction under § 1326. But that is a deci *888 sion for the agency to make by balancing its interest in the use of its limited resources with its interest in securing a removal order that can better support future criminal charges. Courts have no right to dictate that executive decision or to establish new criteria the Executive Branch must employ to make it.
The majority opinion unnecessarily intrudes on the Executive Branch’s administration of immigration policy and not only tells the Department of Homeland Security the criteria it must consider in the exercise of its prosecutorial discretion, but it also announces a novel holding that an alien who unlawfully re-enters the country has a due process right to influence the exercise of that prosecutorial discretion. Its rule adds requirements that have no basis in law. The Supreme Court has clearly told us not to do this. Landon, 459 U.S. at 35, 103 S.Ct. 321. Rather than remand on the basis of these nonexistent requirements, I would deny relief and leave Villa no worse off than where he stood before he willfully defied his removal order and unlawfully re-entered the country. I respectfully dissent.

. The majority’s due process argument is a nice piece of advocacy — and an argument I fail to find anywhere in Villa’s briefing. I thought the rule was that petitioners for relief *885 waive any arguments they fail to raise in briefing, see Lopez-Vasquez v. Holder, 706 F.3d 1072, 1079-80 (9th Cir.2013) ("Lopez-Vasquez waived his challenge to the BIA's denial of his motion to reopen by failing to argue it in his brief.”), but the majority believes a few scattered references to "due process" do all the necessary work. The government, meanwhile, was not provided any meaningful opportunity to respond to the substance of the due process argument the majority has now conjured into an opinion.

. The absence of any statutory or regulatory standard whatsoever establishing this discretion easily distinguishes this case from Larita-Martinez v. INS, 220 F.3d 1092 (9th Cir.2000), where federal law clearly established the' peti *886 tioner's right to seek suspension of deportation, even if it was "wholly discretionary,” and the alleged violation occurred during an appeal to the BIA, which was provided to the petitioner by law.

. That memorandum also supports the immigration officer's decision in Villa's case. The memorandum lists several "negative factors” that should "prompt particular care and consideration” when ICE officers are "exercising prosecutorial discretion.” They include “serious felons” and aliens like Villa-Anguiano “with a record of illegal-re-entry.” Id. at 5. If these are the factors that influence the exercise of discretion, how can my colleagues say that discretion was abused here?

. There is no basis for the majority's conclusion that the immigration official proceeded on bad information regarding Villa's criminal prosecution. The addendum to the Record of Deportable/Inadmissible Alien stated that Villa "served 156 days confinement in federal *887 custody for violation of 8 USC 1326(a) — Deported Alien Found in United States.” But the form also stated that "Subject's case was dismissed for violation of 8 USC 1326(a)— Deported Alien Found in the United States.” (emphasis added). If the majority intends to take the first sentence at face value, then it must believe as well that the "reasonably competent” immigration officer somehow believed that Villa’s conviction was dismissed because the court found Villa violated the statute. But that can’t be right. It is more reasonable to read the two sentences in conjunction and conclude that the officer noted Villa had been detained for 156 days awaiting trial on the charge that he violated § 1326, and that five months later the court dismissed the charge.