**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CROWN POINT DEVELOPMENT, INC.,
  *Plaintiff-Appellant,*

v.

CITY OF SUN VALLEY; JON C.
THORSON, in his official capacity
as Mayor of Sun Valley and in his
private capacity; ANN AGNEW;
BLAIR BOAND; KEVIN LAIRD; LUD
RENICK, in their official capacities
as members of the Sun Valley
City Counsel and in their
individual and private capacities,
  *Defendants-Appellees.*

No. 06-35189

D.C. No.
CV-05-00492-EJL

OPINION

Appeal from the United States District Court
for the District of Idaho
Edward J. Lodge, District Judge, Presiding

Argued and Submitted
October 19, 2007—Seattle, Washington

Filed November 1, 2007

Before: Dorothy W. Nelson, C. Arlen Beam,* and
Pamela Ann Rymer, Circuit Judges.

Opinion by Judge Rymer

---

*The Honorable C. Arlen Beam, Senior United States Circuit Judge for
the Eighth Circuit, sitting by designation.

14451

**COUNSEL**

J. David Breemer, Pacific Legal Foundation, Sacramento, California, for the appellant.

James J. Davis, Boise, Idaho, for the appellees.

**OPINION**

RYMER, Circuit Judge:

This appeal requires us to decide whether a developer may state a claim for relief based on the allegedly arbitrary and irrational denial of a permit application. The district court said not, relying on our decision in *Armendariz v. Penman*, 75 F.3d 1311 (9th Cir. 1996) (en banc), which held that the Fifth Amendment's Takings Clause subsumes or "preempts" substantive due process claims. Accordingly, it dismissed the complaint by Crown Point Development, LLC (Crown Point) against the City of Sun Valley and members of the City Council.

Crown Point appeals, arguing that it may proceed despite *Armendariz*, because the United States Supreme Court ruled

in *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 532 (2005), that a property owner's challenge to a regulation that does not substantially advance legitimate interests is grounded in due process, not the Takings Clause. We agree that *Armendariz* has been undermined to the limited extent that a claim for wholly illegitimate land use regulation is not foreclosed. However, the record is undeveloped on this point. Having clarified that *Armendariz* does not block the way altogether, we leave it to the district court on remand to flesh out the parameters of Crown Point's claim. We also leave questions of a stay, or abstention, for the district court's consideration.

I

According to its complaint, Crown Point is the developer of Crown Ranch, a 9.76 acre residential subdivision in Sun Valley, Idaho. The project has proceeded over a number of years and in five separate phases. Crown Ranch is zoned RM-2 which carries a minimum density requirement of four units per gross acre. To meet this standard, Crown Point was required to build 39 total units on the property.

It built 26 units during Phases 1 through 4. Originally, it planned to construct eight units in Phase 4 and 11 units in Phase 5. However, Sun Valley required Crown Point to reduce the number of units in Phase 4 from eight to six in order to receive approval. This meant that Crown Point had to propose constructing 13 townhouse units for Phase 5 in order to satisfy the minimum density requirement.

The Sun Valley Planning and Zoning Commission requested revisions, which Crown Point made, and the Commission approved the amended application. But a current Crown Ranch resident and the Crown Ranch Homeowners Association, being dissatisfied with the overall density of Phase 5, appealed to the City Council. When the Council denied the application, Crown Point sought judicial review in state court, which remanded for new Findings of Fact and

Conclusions of Law. Another round of litigation ensued with respect to the new findings, with the Idaho district court eventually concluding that the City Council's denial of Crown Point's application was arbitrary and capricious. The Idaho Supreme Court reversed that ruling because the trial court had improperly expanded the administrative record, but again remanded because the revised findings of fact were still insufficient. *Crown Point Dev., Inc. v. City of Sun Valley*, 156 P.3d 573, 579 (Idaho 2007).

Meanwhile, Crown Point filed this action pursuant to 42 U.S.C. § 1983. It alleges a single, substantive due process claim. Crown Point's theory is that the City Council arbitrarily interfered with its property rights by denying the application for Phase 5 without any evidence in support and under circumstances forced by the City Council's own prior actions.

Sun Valley moved to dismiss on the footing that well-settled law in this circuit does not allow substantive due process claims pursuant to the Fourteenth Amendment when the interest at stake is real property, citing *Armendariz*, 75 F.3d at 1326. The district court agreed that *Armendariz* controlled, granted the motion, and declined to rule on the City's alternative motion to stay proceedings.

Regrettably, Crown Point did not assist the district court — as it should have done — by arguing there as it does here that *Lingle*'s repudiation of the "substantially advances" takings formula undercuts *Armendariz*. Still, it *did* argue that certain substantive due process rights continue despite *Armendariz,* and are not subsumed in the Takings Clause. This is the same argument now made, albeit supported by different authorities and reasoning. Although a discretionary call and a somewhat close one, we are hard-pressed to accept Sun Valley's position that Crown Point waived the argument that *Lingle* modifies the reach of *Armendariz*. Where "the question presented is one of law, we consider it in light of 'all relevant authority,' regardless of whether such authority was properly presented

in the district court." *Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901, 908 (9th Cir. 2004) (quoting *Elder v. Holloway*, 510 U.S. 510, 516 (1994)). Therefore, we reach the merits of Crown Point's *Lingle*-based argument.

## II

In *Armendariz*, a group of low-income property owners brought a § 1983 action challenging the City of San Bernardino's allegedly overzealous enforcement of housing code provisions in order to drive the tenants out of a high-crime area and to allow a commercial developer to acquire the property "on the cheap." We held that the right which the property owners sought to vindicate originated in the Fifth Amendment Takings Clause rather than in substantive due process, thus the claim failed in light of *Graham v. Connor*, 490 U.S. 386 (1989), and *Albright v. Oliver*, 510 U.S. 266 (1994). *Graham* held that claims of excessive force brought under § 1983 must be analyzed under the more specific Fourth or Eighth Amendments rather than under the more subjective standard of substantive due process; *Albright* reaffirmed the *Graham* rule where the plaintiff alleged that the defendants violated his substantive due process rights by initiating a criminal prosecution without probable cause.

**[1]** More to the point here, in *Macri v. King County*, 126 F.3d 1125, 1129 (9th Cir. 1997), we held that a claim arising out of an application to subdivide property which the owners alleged was denied without substantially advancing a legitimate public purpose was actually a takings claim, not a claim lying solely in substantive due process. This was because the Supreme Court had repeatedly recognized — in *Agins v. City of Tiburon*, 447 U.S. 255, 260 (1980), *Nollan v. California Coastal Comm'n,* 483 U.S. 825 (1987), and *Dolan v. City of Tigard*, 512 U.S. 374, 383-85 (1994)) — that "a land use restriction that does not 'substantially advance legitimate state interests' or 'denies an owner economically viable use of his land' effects a taking." *Macri*, 126 F.3d at 1129 (quoting

*Agins*). In other words, our pre-*Lingle* view was that a regulation that does not "substantially advance legitimate state interests" is a *taking* under *Agins*, and if it is a taking, then it follows from *Armendariz* that the Fifth Amendment's Taking Clause is the specific textual source of protection against such conduct.[1]

However, this understanding of the *Agins*' "substantially advances" language — i.e., that it is a "stand-alone regulatory takings test" — was rejected by the Supreme Court in *Lingle*. 544 U.S. at 540. The Court concluded "that this formula prescribes an inquiry in the nature of a due process, not a takings, test, and that it has no proper place in our takings jurisprudence." *Id.* As the Court explained, the "substantially advances" test "does not help to identify those regulations whose effects are functionally comparable to government appropriation or invasion of private property; it is tethered neither to the text of the Takings Clause nor to the basic justification for allowing regulatory actions to be challenged under the Clause." *Id.* at 542.

[2] In this, *Lingle* pulls the rug out from under our rationale for totally precluding substantive due process claims based on arbitrary or unreasonable conduct. As the Court made clear, there is no specific textual source in the Fifth Amendment for

---

[1]We have since applied *Armendariz* in a number of similar contexts. *See, e.g., Buckles v. King County*, 191 F.3d 1127, 1137 (9th Cir. 1999) (precluding a substantive due process claim based on "spot zoning"); *Madison v. Graham*, 316 F.3d 867, 871 (9th Cir. 2002) (holding due process claims based on governmental interference with property rights foreclosed by the Takings Clause); *Squaw Valley Development Co. v. Goldberg*, 375 F.3d 936, 950 (9th Cir. 2004) (noting that the developer was required to pursue its claim of alleged overzealous and selective regulation under the Takings Clause, even if a takings claim would have failed); *Ventura Mobilehome Communities Owners Ass'n. v. City of San Buenaventura*, 371 F.3d 1046, 1054 (9th Cir. 2004) (rejecting a due process challenge to a rent control ordinance on the theory that it did not substantially advance a legitimate purpose because it was barred by the explicit textual provisions of the Takings Clause).

protecting a property owner from conduct that furthers no legitimate government purpose. Thus, the *Graham* rationale no longer applies to claims that a municipality's actions were arbitrary and unreasonable, lacking any substantial relation to the public health, safety, or general welfare.

Sun Valley posits that Crown Point's claim nevertheless remains controlled by the Takings Clause and *Armendariz*'s preemption analysis because the claim involves a deprivation of property whether or not the City's action effected a taking. While a plausible view, yet another supervening decision, *County of Sacramento v. Lewis*, 523 U.S. 833 (1998), suggests otherwise. In *Lewis*, the estate of a passenger who was accidentally struck by a deputy sheriff at the end of a high speed chase brought a due process claim under § 1983. The Court rejected the County's argument that the due process claim was invariably subsumed by the Fourth Amendment, explaining that "*Graham* does not hold that all constitutional claims relating to physically abusive government conduct must arise under either the Fourth or Eighth Amendments; rather, *Graham* simply requires that if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *Id.* at 843 (quoting *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997)). The Court went on to hold that Lewis's claim was not "covered" by the Fourth Amendment because he had not been subjected either to a search or to a seizure.

**[3]** Applying the *Lewis* rule to land use, the Fifth Amendment would preclude a due process challenge only if the alleged conduct is actually covered by the Takings Clause. *Lingle* indicates that a claim of arbitrary action is not such a challenge. Rather, it identifies three basic categories of regulatory action that generally will be deemed a taking for Fifth Amendment purposes: where government requires an owner to suffer a permanent physical invasion of property, *see*

*Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982); where a regulation deprives an owner of all economically beneficial use of property, *see Lucas v. South Carolina Coastal Council*, 505 U.S. 1003 (1992); and where the *Penn Central* factors are met, *Penn Central Transp. Co. v. New York City*, 438 U.S. 104 (1978).[2] To the extent a property owner's complaint falls within one of these categories (or some other recognized application of the Takings Clause), *Lewis* suggests that the claim must be analyzed under the Fifth Amendment whether or not it proves successful; but to the extent that the conduct alleged cannot be a taking, *Lewis* and *Lingle* indicate that a due process claim is not precluded. *Lingle*, 544 U.S. at 542 ("[A] regulation that fails to serve any legitimate governmental objective may be so arbitrary or irrational that it runs afoul of the Due Process Clause.") (citing *Lewis*, 523 U.S. at 846); *see Lingle,* 544 U.S. at 549 (Kennedy, J. concurring) (noting that the *Lingle* decision "does not foreclose the possibility that a regulation might be so arbitrary or irrational as to violate due process").

**[4]** Accordingly, it is no longer possible in light of *Lingle* and *Lewis* to read *Armendariz* as imposing a blanket obstacle to all substantive due process challenges to land use regulation. *See Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc) (holding that a three-judge panel may depart from circuit precedent when an intervening decision by the Supreme Court has undercut its theory or reasoning such that the two are clearly irreconcilable). We have implicitly recognized as much in two recent decisions. In *Spoklie v. Montana*,

---

[2]"Primary among those factors are the economic impact of the regulation on the claimant and, particularly, the extent to which the regulation has interfered with distinct investment-backed expectations. In addition, the character of the governmental action — for instance whether it amounts to a physical invasion or instead merely affects property interests through some public program adjusting the benefits and burdens of economic life to promote the common good — may be relevant in discerning whether a taking has occurred." *Lingle*, 544 U.S. at 538-39 (internal quotations and citations omitted).

we affirmed dismissal of a takings claim which asserted a "substantially advances" theory, citing *Lingle*, and separately addressed and affirmed dismissal of a substantive due process claim because the state's justification was not "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." 411 F.3d 1051, 1057 & 1059 (9th Cir. 2005) (quoting *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 369 (1926)). And in *Equity Lifestyle Properties, Inc. v. County of San Luis Obispo*, ___ F.3d ___, 2007 WL 2694667 (9th Cir. 2007), we determined that a municipal rent control ordinance survived a due process challenge because rent control laws are rationally related to a legitimate public purpose, but in doing so noted that *Lingle* answers the question whether takings jurisprudence or due process doctrine governs by stating: "[The Takings Clause] is designed not to limit the governmental interference with property rights *per se*, but rather to secure *compensation* in the event of otherwise proper interference . . . . Due process violations cannot be remedied under the Takings Clause, because if a government action is found to be impermissible — for instance because it fails to meet the 'public use' requirement or is so arbitrary as to violate due process — that is the end of the inquiry. No amount of compensation can authorize such action." 2007 WL at *8 n.16 (quoting *Lingle*, 544 U.S. at 537, 543) (internal quotation marks and citations omitted). We now explicitly hold that the Fifth Amendment does not invariably preempt a claim that land use action lacks any substantial relation to the public health, safety, or general welfare. Therefore, we must reverse, as the district court dismissed Crown Point's claim solely on the authority of *Armendariz* which held to the contrary.

This said, there is scant basis for us to go further. We decline to do so, as fleshing out the parties' positions with specific reference to the allegations in the complaint, or to a record adduced on summary judgment, will give us the benefit of the district court's informed analysis on a developed record. *See Dream Palace v. County of Maricopa*, 384 F.3d

990, 1005 (9th Cir. 2004). Consequently, we simply hold that Crown Point's substantive due process theory is not foreclosed altogether. We leave it to the district court on remand to determine whether a claim *is* stated, and to consider other, related, issues such as whether the claim is ripe or whether a stay, or abstention, are indicated. As to these points we express no opinion.

REVERSED AND REMANDED.