**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

COLONY COVE PROPERTIES, LLC, a
Delaware limited liability
company,
                    *Plaintiff-Appellant,*

            v.

CITY OF CARSON, a municipal
corporation; CITY OF CARSON
MOBILEHOME PARK RENTAL REVIEW
BOARD, a public administrative
body,
              *Defendants-Appellees.*

No. 09-57039

D.C. No.
2:08-cv-07065-PA-
JWJ

OPINION

Appeal from the United States District Court
for the Central District of California
Percy Anderson, District Judge, Presiding

Argued and Submitted
February 14, 2011—Pasadena, California

Filed March 28, 2011

Before: Arthur L. Alarcón, Pamela Ann Rymer, and
Jay S. Bybee, Circuit Judges.

Opinion by Judge Alarcón

**COUNSEL**

Matthew W. Close, O'Melveny & Myers LLP, Los Angeles, California for the plaintiff-appellant.

William W. Wynder, Aleshire & Wynder, LLP, Irvine, California for the defendants-appellees.

**OPINION**

ALARCÓN, Circuit Judge:

Colony Cove Properties, LLC ("Colony Cove") appeals from the district court's dismissal of its federal claims filed pursuant to 42 U.S.C. § 1983, and its state law claim seeking a writ of administrative mandate pursuant to Cal. Civ. Pro. Code § 1094.5. Colony Cove contends that the City of Carson's 1979 mobilehome rent control ordinance, and its implementing guidelines as they stood after the adoption of a 2006 amendment, deprive mobilehome park owners of the value of

their property and transfer it to park residents, who are able to sell their mobilehomes at a premium because they are located on rent-controlled spaces. Colony Cove asserts facial and as applied challenges to the ordinance and amended guidelines as violative of the Fifth Amendment's Takings Clause and the Fourteenth Amendment's Due Process Clause. The district court dismissed Colony Cove's facial takings claim as time-barred, its as applied takings claim as unripe, and its as applied due process claim for failure to state a claim; the district court declined to exercise supplemental jurisdiction over Colony Cove's related state law claim. After reviewing the briefs and the record, we are persuaded that the district court did not err in dismissing this action.

## I

### A

In 1979, the City of Carson ("the City"), adopted a rent control ordinance applicable to mobilehome parks: the Mobilehome Space Rent Control Ordinance (the "1979 Ordinance"), Carson, Cal. Mun. Code art. IV, ch. 7 (1979). The City also adopted "Guidelines for Implementation of the Mobilehome Space Rent Control Ordinance" (the "Guidelines"). In 1998, the Guidelines were revised in order to make them consistent with the recent amendments to the Ordinance.

Under the 1979 Ordinance, the City's Mobilehome Park Rental Review Board ("Board") hears and determines rent adjustment applications. The Board is authorized to "grant such rent increases as it determines to be fair, just and reasonable." Carson, Cal. Mun. Code § 4704(g). "A rent increase is fair, just and reasonable if it protects Homeowners from excessive rent increases and allows a fair return on investment to the Park Owner." *Id.* The 1979 Ordinance states that, in making its determinations, the Board:

> shall consider the following [11 enumerated] factors and any Guidelines adopted by the City Council, as

well as any other relevant factors, in making its determination and no one (1) factor shall be determinative.

*Id.* The 11 factors the Board must consider, pursuant to the 1979 Ordinance, include changes in the Consumer Price Index ("CPI"), the rent for comparable mobilehome spaces in the City of Carson, "[t]he completion of any capital improvements related to the mobilehome space or spaces in the rent increase application[,]" changes in reasonable operating and maintenance expenses, and the "amount and quality of services provided by the applicant to the affected tenant." *Id.* § 4704(g)(1)-(11).

Pursuant to a portion of the Guidelines that has not changed since 1998, in light of the assumption that rents set prior to the adoption of the Ordinance provided a fair return when the first park owner made the first application for a rent increase, "each rent increase application after the first application is evaluated only on the basis of changes in income, expenses, profit, the CPI, maintenance, amenities and services that have occurred since the date of the last increase approved by the Board." Since 1998, the Guidelines have also provided that "[d]ebt service incurred prior to the adoption of the Ordinance to purchase or operate the park is generally an allowable operating expense." In contrast, Subsection II.A.2 of the Guidelines provides in part:

> f. Debt service incurred after adoption of the Ordinance to purchase a park may be an allowable operating expense if the purchase price paid was reasonable in light of the rents allowed under the Ordinance and involved prudent and customary financing practices. . . . When it is determined that some increase in debt service was reasonably necessary to acquire the park, but that the amount incurred was not reasonable in light of the Ordinance and customary and prudent financing practices, then only

the appropriate portion of the debt service incurred may be allowed as an operating expense. The reason for these general rules is that passing on increased debt service due to purchases at prices above those that can be justified by the income earned by the park under rent control or incurred by unusual financing methods, such as 100% financing, would defeat the purpose of rent control.

Regarding the Board's evaluation of an application to increase a park's rental rates, the Guidelines provide that, in addition to the 11 factors enumerated in the 1979 Ordinance, the Board "may consider" a Gross Profit Maintenance ("GPM") analysis, which "is intended to provide an estimate of whether a park is earning the profit estimated to provide a fair return, as established by the immediately prior rent increase, with some adjustment to reflect any increase in the CPI." The Guidelines also state that the GPM analysis "is an aid to assist the Board in applying the factors in the Ordinance" and "is not intended to create any entitlement to any particular rent increase."

On or about April 4, 2006, Colony Cove purchased the mobilehome park now known as Colony Cove Mobile Estates ("the Park") in the City of Carson for $23,050,060. Colony Cove obtained financing for approximately $18 million of the purchase price, which resulted in debt service payments exceeding $1.3 million per year.

On October 31, 2006, the City of Carson's city council amended the Guidelines for the implementation of the 1979 Ordinance "so as to better assure that residents of mobilehome parks are protected from excessive rent increases that could reduce the supply of affordable housing in the community." The stated purpose of the 2006 amendment of the Guidelines (the "2006 Amendment") was to "provide additional analytical tools to evaluate pending applications for rent increase, and that such analytical tools will also help to assure

that the mobilehome park owners within the City receive a constitutional fair return on their investments." The relevant portion of the 2006 Amendment provides that the Guidelines were "amended to add a new Section II.C., to read, in its entirety, as follows":

> C. Maintenance of Net Operating Income (MNOI) Analysis. *In addition to the analysis set forth in Sub-Section II.B.*, above, *the Board may also consider*, a "maintenance of net operating income analysis," which compares the net operating income (NOI) level expected from the last rent increase granted to a park owner and prior to any pending rent increase application (the so-called "target NOI") to the NOI demonstrated in any pending rent increase application.

> 1. *Where relevant* to any pending rent increase application, *a[n] MNOI analysis shall be included in the staff report to the Board*, *along with* the analysis set forth in Sub-Section II.B., above, *and in addition to* the analysis considering and evaluating the eleven (11) factors set forth in Municipal Code § 4704(g), and where there is sufficient data submitted by the applicant to permit such an analysis.

> 2. An MNOI analysis is intended to provide another method to estimate whether any applicant for a rent increase is earning a constitutional fair return, as established by the immediately prior rent increase, with appropriate adjustment(s) to reflect changes in the CPI, and *is a methodology approved by the courts in which changes in debt service expenses are not to be considered in the analysis (unlike a gross profits maintenance analysis, where such changes may be considered).* The analysis is another aid to assist the Board in applying the factors in the Ordinance, as is to be considered in company

with the factors in Municipal Code § 4704(g), and all other relevant evidence presented and the statutory purposes of the mobilehome space rent control ordinance. *An MNOI analysis is not intended to create any particular rent increase.*

2006 Amendment (emphases added).

On August 6, 2008, the Board issued its decision ("2008 Board Decision") on Colony Cove's October 1, 2007 application for a general rent increase for the Park. Colony Cove had requested an average rent increase of $618.05 per rental space in the Park that would have raised the average monthly rental rate from $414.25 to $1,032.30 per space. In its application, Colony Cove claimed it was entitled to a monthly rate increase ranging from $208.22 to $618.05 (a 136% to 179% increase) per space based on "the following alternative methodologies and theories:" return on cash investment ($618.05 increase), return on total investment ($365.93 increase), gross profits maintenance ("GPM") analysis ($388.85 increase), and maintenance of net operating income ("MNOI") methodology ($208.22 increase).

The Board's written decision set out the factors it is required to consider under the 1979 Ordinance.[1] The Board also discussed its evaluation of the evidence submitted by Colony Cove and the City of Carson in light of the "various methodologies to be considered in complying with its statutory obligation to assure the Park Owner [a] fair return while at the same time protecting these Park residents from excessive rent increases." The Board stated that it considered Colony Cove's argument that it had a vested right in a rent increase to cover the debt service it incurred in purchasing the Park. The Board explained that "when the Park Owner purchased the property, the ordinance and guidelines both stated that there was no entitlement to a rent increase pursuant to

---

[1]Carson, Cal. Mun. Code § 4704(g)(1)-(11).

any particular standard or formula." Based on its review, the Board granted a $36.74 (or 8.10% to 10.62%) increase per space, per month.

## B

Colony Cove did not institute litigation in a California state court to challenge the Board's decision. Rather, on October 27, 2008, Colony Cove filed suit in the United States District Court for the Central District of California, seeking to have what Colony Cove termed the City's "rent control scheme," comprising the 1979 Ordinance and the Guidelines as amended by the 2006 Amendment ("Amended Guidelines"), declared unconstitutional.

In its Complaint, Colony Cove asserts both facial and as applied challenges to the City's rent control scheme as violative of the Fourteenth Amendment's Due Process Clause and the Fifth Amendment's Takings Clause (Claims 1-4); a facial challenge under the Fourteenth Amendment's Equal Protection Clause (Claim 5); a declaratory relief claim (Claim 6); and a claim seeking a writ of administrative mandate pursuant to state law, Cal. Civ. Pro. C. § 1094.5 (Claim 7). Colony Cove alleges that the City's 1979 Ordinance and the Amended Guidelines hold rents well below market rates, which "deprives Colony Cove of over $30 million of property value" and transfers that value to park residents "who on average have been receiving more than $118,000 for their mobilehomes that on average have an appraised value of approximately $33,000." As a result, Colony Cove alleges, the rent control Ordinance and Amended Guidelines "effectively take[ ] property value from park owners and give[ ] it to park residents."

In its Complaint, Colony Cove alleges as follows:

> The Board has no discretion with respect to the Guidelines. Although styled as "Guidelines," these

provisions of the City rent control law are mandatory and must be followed by the Board. The Guidelines have had the same de facto and de jure force and effect as actual amendments to the Ordinance, and the Board and City staff treat[ ] them as such.

Colony Cove also alleges in its Complaint that "[u]nder the City's Rent Control Scheme as it existed at the time Colony Cove purchased the Park in April 2006, Colony Cove was entitled to, and reasonably expected to, have its debt service expenses included as an allowable operating expense."

On December 5, 2008, the City moved to dismiss for lack of subject matter jurisdiction and for failure to state a claim, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), respectively. In its briefing on the motion, Colony Cove conceded that its facial equal protection claim (Claim 5) was foreclosed by controlling precedent. On November 24, 2009, the district court issued an order dismissing with prejudice all of Colony Cove's remaining constitutional claims (Claims 1-4) and the associated parts of its declaratory relief claim (Claim 6), and declining to exercise supplemental jurisdiction over the request for a writ of administrative mandamus under state law (Claim 7). Colony Cove timely appealed, challenging the district court's ruling as to all but two of its claims.[2]

**C**

After the City filed its motion to dismiss and before the district court ruled on that motion, on October 20, 2009, the City of Carson's city council passed a resolution to approve the conversion of the Park to subdivided resident ownership.[3] On

---

[2]In its briefing on appeal, Colony Cove concedes that its facial due process (Claim 1) and equal protection (Claim 5) claims are foreclosed by current precedent. Appellant's Opening Br. at 59-60.

[3]The City filed a Request for Judicial Notice ("RJN") with its answering brief on July 23, 2010. The City asks the court to take judicial notice of

December 23, 2009, shortly after the district court ruled on the City's motion to dismiss, Colony Cove filed suit in Los Angeles Superior Court, petitioning for a writ of administrative mandate pursuant to California Code of Civil Procedure § 1094.5. In its state court complaint, Colony Cove alleged that the City's decisions on its rent increase applications deprived it of a fair return on its investment, and Colony Cove asked the state court to compel the City to permit a rent increase of $200 per month per space, rather than the $36.74 increase previously granted by the City.

## II

This court has jurisdiction over this appeal from a final order of the district court. 28 U.S.C. § 1291. The court reviews de novo a district court's decision to grant a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), or for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1030 (9th Cir. 2008); *Fed. Deposit Ins. Corp. v. Nichols*, 885 F.2d 633, 635 (9th Cir. 1989). "When ruling on a motion to dismiss, we may 'generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly sub-

---

the facts established in and by the following documents: (1) the City Council of the City of Carson's October 20, 2009 adoption of Resolution No. 09-108 Approving Tentative Parcel Map No. 067049 for Mobilehome Resident Ownership Conversion of Colony Cove Mobilehome Park; (2) Petition for Writ of Administrative Mandate filed by Colony Cove on December 23, 2009, in Los Angeles Superior Court; (3) Colony Cove's motion for writ of administrative mandate in that state court action; and (4) a June 30, 2010 minute order issued by the state court denying Colony Cove's petition for writ of administrative mandate. RJN at 1-2, Exs. A, B, C, and D. Colony Cove opposed the RJN on August 5, 2010, and the City filed a response thereto on August 11, 2010. Neither the contents of the City Council of the City of Carson's Resolution nor the existence of the state court proceedings is in dispute. Accordingly, we grant the request in a separate order. Fed. R. Evid. 201(b)-(d).

ject to judicial notice.' "[4] *Outdoor Media Grp., Inc. v. City of Beaumont*, 506 F.3d 895, 899-900 (9th Cir. 2007) (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007)). The court accepts factual allegations in the complaint as true and construes the pleadings in the light most favorable to the nonmoving party. *Outdoor Media*, 506 F.3d at 900. However, this court need not accept as true conclusory allegations that are contradicted by documents referred to in the complaint. *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1950 (2009) ("[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."); *see also Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) ("[W]e are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint, and we do not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." (internal quotation marks, citations, and alterations omitted)).

## III

Colony Cove advances a number of arguments in connection with the viability of its facial takings claim (Claim 3), as applied takings claim (Claim 4), and as applied substantive due process claim (Claim 2). We address each in turn.

## A

Colony Cove's facial takings claim (Claim 3) advances theories that the 1979 Ordinance and Amended Guidelines work a regulatory taking under *Penn Central Transp. Co. v. City of*

---

[4]The district court took judicial notice of a number of copies of the Ordinance, Guidelines, the 2006 Amendments, and a number of other relevant documents.

*New York*, 438 U.S. 104 (1978); a physical taking; and a private taking. The district court dismissed Claim 3 as time-barred. Colony Cove argues that the claim is not time-barred because the 2006 Amendment created a new injury from which a new limitations period began to run. Additionally, Colony Cove contends that its economic injury under the rent control scheme is sufficient to confer standing to pursue the claims. It also asserts regarding the merits of each of its theories (regulatory, physical, private) that a taking has occurred. Because the timeliness of any facial takings claim is dispositive, and this court's recent decision in *Guggenheim v. City of Goleta*, No. 06-56306, ___ F.3d. ___, 2010 WL 5174984 (9th Cir. Dec. 22, 2010) confirms that dismissal was appropriate, the court does not reach the merits of Colony Cove's facial takings claim.

**[1]** California's statute of limitations for personal injury actions governs claims brought pursuant to 42 U.S.C. § 1983. *Taylor v. Regents of Univ. of Cal.*, 993 F.2d 710, 711 (9th Cir. 1993) (citing *Wilson v. Garcia*, 471 U.S. 261, 275 (1985) (holding that state personal injury limitation statute governs § 1983 claims)); *Del Percio v. Thornsley*, 877 F.2d 785, 786 (9th Cir. 1989). In California, personal injury claims that accrued after January 1, 2003, are subject to a two-year statute of limitations. *See* Cal. Code Civ. Proc. § 335.1; *Canatella v. Van De Kamp*, 486 F.3d 1128, 1132-33 (9th Cir. 2007).

**[2]** This court recently confirmed that the statute of limitations for facial challenges to an ordinance runs from the time of adoption:

> As we held in *Levald, Inc. v. City of Palm Desert*, "[i]n the takings context, the basis of a facial challenge is that the very enactment of the statute has reduced the value of the property or has effected a transfer of a property interest. This is a single harm, measurable and compensable when the statute is passed."

*Guggenheim*, 2010 WL 5174984 at *4 (quoting *Levald, Inc. v. City of Palm Desert*, 998 F.2d 680, 688 (9th Cir. 1993)). The rent control ordinance at issue in *Guggenheim* was enacted by Santa Barbara County in 1979, and amended in 1987. *Id.* at *1. The Guggenheims purchased a mobilehome park in 1997. In 2002, the City of Goleta incorporated territory that included the land on which the mobilehome park was located, and it adopted, in toto, the rent control ordinance "so the county rent control ordinance for mobile home parks became the city rent control ordinance on the first day of the City's existence." *Id.* The Guggenheims brought a facial challenge to the rent ordinance on the theory that "by locking in a rent below market rents, and allowing tenants to sell their mobile homes to buyers who will still enjoy the benefits of the controlled rent (albeit subject to upward adjustment), the ordinance shifts much of the value of ownership of the land from the landlord to the tenant." *Id.* (footnote omitted). After a rehearing en banc, this court affirmed the district court's grant of summary judgment in favor of the City of Goleta. *Id.* at *2.

The timeliness of the action the Guggenheims filed in 2002 was not at issue because their facial challenge was made with respect to the 2002 ordinance. *Id.* at *3 ("The Guggenheims challenge only the 2002 City of Goleta ordinance, not the 1979 or 1987 County of Santa Barbara ordinances."). This court's observation that a facial challenge to any earlier version of Santa Barbara County's ordinance was time-barred was not a holding; rather, it reflected that the litigants and the courts all recognized that the limitations period ran from the time the ordinance was adopted. *Id.* at *4.

**[3]** Here, the limitations period for any facial challenge to the 1979 Ordinance has long since run. Colony Cove's facial challenge to the City's "rent control scheme" proceeds from the premise that the 2006 Amendment of the Guidelines was "imbued with the force of law[,]" so that changes to the Guidelines had the same legal effect as would an amendment

to the 1979 Ordinance itself. As an initial matter, the court need not, and does not, accord an assumption of truthfulness to legal conclusions that are not supported by factual allegations in the Complaint or that are contradicted by documents referred to in the Complaint. *Iqbal*, 129 S.Ct. at 1950; *Fox Family Worldwide,* 328 F.3d at 1139.

**[4]** Although this court has observed that "substantive amendments to a takings statute will give rise to a new cause of action . . . if those amendments 'alter the effect of the ordinance upon the plaintiffs[,]' " *Action Apartment Ass'n, Inc. v. Santa Monica Rent Control Bd.*, 509 F.3d 1020, 1027 (9th Cir. 2007) (citation omitted), the 2006 Amendment did not alter the 1979 Ordinance itself. Rather, the 2006 Amendment only added a new methodology, the MNOI methodolgy, to the Guidelines. The 1979 Ordinance itself directs only that the Board "shall *consider*" the 11 statutory factors, the Guidelines, "as well as any other relevant factors." Carson, Cal. Mun. Code § 4704(g) (emphasis added). In the same sentence, the 1979 Ordinance states that "no one (1) factor shall be determinative." *Id.*

**[5]** Although the Guidelines set out requirements for park owners making an application, and for the Board in considering applications, by their terms, they "are intended to assist the Board in implementing the Ordinance." The purpose and provisions of the 1979 Ordinance remain controlling. The allegations in Colony Cove's Complaint are not sufficient to support a determination that the 2006 Amendment to the Guidelines has the force and effect of law. *Cf. River Runners for Wilderness v. Martin*, 593 F.3d 1064, 1071 (9th Cir. 2010) (concluding that National Park Service's management policies, which were "written in mandatory language, were mentioned in the Federal Register, and ha[d] been found binding [in a district court decision][,]" did not have the force and effect of law because they "do not purport to prescribe substantive rules" and their text "makes clear that they are intended only to provide guidance within the Park Service,

not to establish rights in the public generally"); *United States v. Fifty-Three (53) Eclectus Parrots*, 685 F.2d 1131, 1136 (9th Cir. 1982) (concluding that the procedure set out in the Customs Manual did not have the "force and effect of law" to be enforceable against an agency because it was not a "substantive rule," which can be contrasted with "interpretive rules, general statements of policy or rules of agency organization, procedure or practice").

**[6]** Accordingly, setting aside Colony Cove's conclusory allegations that the Guidelines are imbued with the force of law, the facial takings claim is time-barred because the 2006 Amendment to the Guidelines cannot be reasonably read as a substantive amendment of the 1979 Ordinance that alters its effect on mobilehome park owners.

**B**

**[7]** The district court dismissed Colony Cove's as applied takings claim (Claim 4) as unripe. Colony Cove maintains that it may pursue that claim in federal court, even though it has not sought compensation through state procedures as required by *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985), both because the California procedure for compensating takings plaintiffs through prospective rent increases is inadequate on the facts of this case, given the magnitude of the taking, and because the requirement that state procedures should be invoked is merely prudential.

The Fifth Amendment does not "require that just compensation for a taking be paid in advance of, or contemporaneously with, the taking; all that is required is that a reasonable, certain and adequate provision for obtaining compensation exist at the time of the taking." *Williamson*, 473 U.S. at 194 (citation and internal quotation marks omitted). "[T]here is no constitutional injury until the plaintiff has availed himself of the state's procedures for obtaining compensation for the

injury, and been denied compensation." *San Remo Hotel v. City and Cnty. of San Francisco*, 145 F.3d 1095, 1102 (9th Cir. 1998). An as applied takings claim must satisfy both prongs of the test set out in *Williamson*. *Id.* at 1101-02. First, a plaintiff must demonstrate that "the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Williamson*, 473 U.S. at 186. Second, the plaintiff must have sought, and been denied, "compensation through the procedures the State has provided for doing so." *Id.* at 194.

**[8]** The state procedure a plaintiff asserting an as applied challenge to a rent control ordinance must pursue includes a *"Kavanau* adjustment," which involves filing a writ of mandamus in state court and, if the writ is granted, seeking an adjustment of future rents from the local rent control board. *Kavanau v. Santa Monica Rent Control Bd.*, 16 Cal. 4th 761 (1997). This court recently concluded that "California's creation and implementation of the *Kavanau* adjustment process provides 'an adequate procedure for seeking just compensation, [and] the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation.' " *Equity Lifestyle Props., Inc. v. Cnty. of San Luis Obispo*, 548 F.3d 1184, 1192 (9th Cir. 2008) (quoting *Williamson*, 473 U.S. at 195).

**[9]** Here, it is undisputed that Colony Cove did not pursue a *Kavanau* adjustment prior to filing suit in federal court. Colony Cove's conclusory allegations of futility are not factual allegations that must be accorded a presumption of truthfulness. *Fox Family Worldwide*, 328 F.3d at 1139. Additionally, as the district court pointed out, this court has considered and rejected futility arguments on theories of undue delay, the futility of returning to the same rent control board if a writ is granted by the state court, and the failure to provide compensation for losses incurred while *Kavanau* proceedings are pending. Dist. Ct. Nov. 24, 2009 Order at 9 (citing *Equity*

*Lifestyle*, 548 F.3d at 1191-92; *Mfg'd Home Cmties. v. City of San Jose*, 420 F.3d 1022, 1035-36 (9th Cir. 2005); *Carson Harbor Vill., Ltd. v. City of Carson*, 353 F.3d 824, 830 (9th Cir. 2004); *Hacienda Valley Mobile Estate v. City of Morgan Hill*, 353 F.3d 651, 658-60 (9th Cir. 2003)). Accordingly, because Colony Cove did not utilize the *Kavanau* adjustment process prior to filing suit in federal court, and this circuit's case law does not support the conclusion that use of the state procedures would be futile, dismissal for failure to satisfy *Williamson*'s "state procedures" requirement was appropriate.

**[10]** Colony Cove maintains that the magnitude of the alleged taking at issue here, coupled with the loss of the additional rents while a *Kavanau* adjustment process that likely will be unsuccessful winds its way through the state courts, compels the conclusion that the *Kavanau* procedure is inadequate in this case. However, this court's decision in *Equity Lifestyle* forecloses a determination that Colony Cove's as-applied takings claim is ripe. *Equity Lifestyle*, 548 F.3d at 1192. In *Equity Lifestyle*, which concerned a challenge to the constitutionality of a mobilehome rent control ordinance, the court rejected arguments similar to those advanced by Colony Cove regarding the ripeness of an as applied takings claim, explaining:

> We reject MHC's argument that "a *Kavanau* adjustment is not an effective remedy unless the park owner successfully *stays* enforcement of the applicable rent control ordinance pending the outcome of the litigation." Although a stay might be useful to *avoid* losses, retrospective compensation also ensures that a property owner does not suffer from unwarranted revenue losses incurred during litigation. We will not second-guess the specific procedures California has chosen to use, so long as the methods provide just compensation.
>
> We thus conclude that California's creation and implementation of the *Kavanau* adjustment process

> provides "an adequate procedure for seeking just compensation, [and] the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." *Williamson*, 473 U.S. at 195, 105 S. Ct. 3108. Because MHC did not seek such compensation, its as-applied challenge to the Board's decision was unripe and the district court properly dismissed that aspect of the claim.

*Id.* (footnote omitted). Here, Colony Cove's argument that California's *Kavanau* adjustment process is inadequate is foreclosed by the law of this circuit. The City Council of the City of Carson's approval of Colony Cove's application to convert the Park to a subdivided condominium form of ownership does not alter this outcome. As the City of Carson urged at oral argument, and Colony Cove did not refute, the effect of the Ordinance on the Park will be extinguished upon the sale of the first condominium lot. *See El Dorado Palm Springs, Ltd. v. City of Palm Springs*, 96 Cal. App. 4th 1153, 1178-79 (2002) (explaining that "[a]t [the] time [that a rental park is converted to resident ownership], sales begin and the economic mitigation measures for displaced residents specified in [California Government Code] section 66427.5, including preemption of a local rent control ordinance, become effective") (emphasis added). It follows, the City of Carson argued, that the conversion of the Park increases the certainty of any damages, if any are awarded by the state court, to which Colony Cove is entitled. To the extent that the *Kavanau* adjustment process would be inadequate to address any adjustment of *future* rents following the conversion of the Park, Colony Cove has not demonstrated that resort to a state inverse condemnation action against the City would not serve as a reasonable, certain and adequate procedure for obtaining just compensation, as required by *Williamson. See Galland v. City of Clovis*, 24 Cal. 4th 1003, 1025 (2001) ("[W]hen landlords seek section 1983 damages from allegedly confiscatory rent regulation, we hold that they must show (1) that a confis-

catory rent ceiling or other rent regulation was imposed and (2) that relief via a writ of mandate and a *Kavanau* adjustment is inadequate."). Accordingly, the district court did not err in dismissing Claim 4 as unripe.

## C

Regarding its as applied substantive due process claim (Claim 2), which the district court dismissed as not cognizable, Colony Cove argues that such claims may be maintained on the ground that the City's rent control scheme has deprived it of a " 'fair and reasonable' return." In the alternative, Colony Cove argues that the Board's application of the 1979 Ordinance and Amended Guidelines was arbitrary and unreasonable.

**[11]** This court's holding in *Armendariz v. Penman*, 75 F.3d 1311 (9th Cir. 1996), that all substantive due process challenges to land regulation are preempted by the Takings Clause, was subsequently abrogated by the Supreme Court's opinion in *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 542 (2005). *See also id.* at 543 (contrasting the Takings Clause, which "presupposes that the government has acted in pursuit of a valid public purpose[,]" with "government action [that] is found to be impermissible — for instance because it . . . is so arbitrary as to violate due process[,]" which "[n]o amount of compensation can authorize"). In *Crown Point Development, Inc. v. City of Sun Valley*, 506 F.3d 851 (9th Cir. 2007), this court explained that "the Fifth Amendment w[ill] preclude a due process challenge only if the alleged conduct is actually covered by the Takings Clause." *Id.* at 855; *see also United States v. Lanier*, 520 U.S. 259, 272, n.7 (1997) (explaining that *Graham v. Connor*, 490 U.S. 109 (1989), "simply requires that if a constitutional claim is covered by a specific constitutional provision, . . . the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process"). However, in *Crown Point*, this court explicitly held "that the

Fifth Amendment does not *invariably* preempt a claim that land use action lacks any substantial relation to the public health, safety, or general welfare." *Id.* at 856 (emphasis added); *see also id.* at 852-53 (stating that, in light of the Supreme Court's decision in *Lingle*, a substantive due process claim challenging a "wholly illegitimate" land use regulation is not foreclosed as subsumed by the Takings Clause).

**[12]** Here, to the extent Colony Cove alleges a due process violation on the ground that the Board's application of the 1979 Ordinance and Amended Guidelines to Colony Cove's application for a rental rate increase denied it a fair return on its investment, Claim 2 is subsumed by the Takings Clause. *See Crown Point*, 506 F.3d at 855-56 ("To the extent a property owner's complaint falls within one of the[ ] categories ["of regulatory action that generally will be deemed a taking for Fifth Amendment purposes"] the claim must be analyzed under the Fifth Amendment whether or not it proves successful. . . . "); *see also Duquesne Light Co. v. Barasch*, 488 U.S. 299, 308 (1989) ("If the rate does not afford sufficient compensation, the State has taken the use of utility property without paying just compensation and so violated the Fifth and Fourteenth Amendments."). Additionally, to the extent Colony Cove alleges a due process violation on the ground that the Board acted arbitrarily or irrationally in applying the 1979 Ordinance and Amended Guidelines, or that the 1979 Ordinance and Amended Guidelines fail to serve any legitimate governmental objective, the district court did not err in dismissing Claim 2 for the reasons and in the manner set out in the district court's November 24, 2009 Order. The Amended Guidelines state, as they have since 1998, that the "purpose of the Ordinance is to protect the homeowners who rent spaces in mobilehome parks in the City from excessive rents and to allow Park Owners to earn a 'just and reasonable' and 'fair' return on investment." The Guidelines also explain that:

> Mobilehome owners ("homeowners") are a uniquely vulnerable group of tenants due to the

investment made in purchasing and maintaining their homes and the high cost and difficulty involved in attempting to move a home. Additionally, many of the homeowners in the City are seniors on fixed incomes and many have low or moderate incomes. Unlike apartment tenants, homeowners cannot just pack their personal belongings and move if rents increase to a level they cannot afford.

The Guidelines have also specifically provided, since at least 1998, that "[d]ebt service incurred *after* adoption of the Ordinance to purchase a park may be an allowable operating expense if the purchase price paid was *reasonable in light of the rents allowed under the Ordinance* and involved prudent and customary financing practices. . . ." Guidelines § II.A.2.f (emphases added).

[13] Neither the Board's use of the MNOI methodology added by the 2006 Amendment, nor its failure or refusal to perform a separate fair return analysis, represents arbitrary or irrational action by the Board. Since 1979, the Ordinance has provided that, in endeavoring both to protect mobilehome owners from excessive rent increases and to allow park owners a fair return on investment, the Board must consider the 11 statutory factors, the Guidelines, and any other relevant factors. The 1979 Ordinance requires only that the Board consider all the factors, and it expressly states that no one factor is determinative. Neither prior nor subsequent to Colony Cove's purchase of the Park did the 1979 Ordinance or the Guidelines require the Board to employ any particular methodology in conducting its review of rental increase applications. Instead, the Amended Guidelines expressly state that neither the GPM nor the MNOI analysis is "intended to create any entitlement to any particular rent increase."

The Board's decision to exclude Colony Cove's debt service expenses from its calculation of the approved rent increase also considered each of the 11 factors set out in the

1979 Ordinance, reviewed evidence submitted by Colony Cove's and the City's experts, and extensively discussed the proper use of the evidence submitted by Colony Cove and the City in determining how much of a rent increase would be required to give Colony Cove a fair return on its investment in the Park.

**[14]** Finally, as this court recently explained in its discussion of the facial due process challenge advanced in *Guggenheim*:

> Whether the City of Goleta's economic theory for rent control is sound or not, and whether rent control will serve the purposes stated in the ordinance of protecting tenants from housing shortages and abusively high rents or will undermine those purposes, is not for us to decide. We are a court, not a tenure committee, and are bound by precedent establishing that such laws do have a rational basis. Students in Economics 101 have for many decades learned that rent control causes the higher rents and scarcity it is meant to alleviate, but the Due Process Clause does not empower courts to impose sound economic principles on political bodies.

*Guggenheim*, 2010 WL 5174984 at *7 (footnotes omitted). Accordingly, in light of the purpose and provisions of the Ordinance, and the rents allowed under the Ordinance and Guidelines prior to Colony Cove's purchase of the Park in April 2006, dismissal of the as applied due process claim (Claim 2) is appropriate because the factual allegations in the Complaint, and the documents referenced therein, do not provide a sufficient basis for a claim that the Board's decision on Colony Cove's application for a rent increase reflects action that was arbitrary, irrational, or lacking any reasonable justification in the service of a legitimate government interest.

**IV**

The district court's order granting the City of Carson's motion to dismiss Colony Cove's claims is AFFIRMED.