**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

EL DORADO ESTATES, a California
Limited Partnership,
                    *Plaintiff-Appellant*,

v.

CITY OF FILLMORE, a California
Municipal Corporation,
                    *Defendant-Appellee*.

No. 12-55549

D.C. No.
2:11-cv-07562-
SJO-RZ

OPINION

Appeal from the United States District Court
for the Central District of California
S. James Otero, District Judge, Presiding

Argued and Submitted
November 7, 2013—Pasadena, California

Filed September 2, 2014

Before: Alfred T. Goodwin, Raymond C. Fisher,
and Richard R. Clifton, Circuit Judges.

Opinion by Judge Clifton

# SUMMARY[*]

### Fair Housing Act / Standing

The panel reversed the dismissal, for lack of Article III standing, of a seniors-only mobile home park owner's action claiming violations of the Fair Housing Act when the City of Fillmore, California, allegedly interfered with an application for a subdivision of the mobile home park by causing unreasonable delays and imposing extralegal conditions because of a fear that subdivision would lead to the opening of the park to families.

The panel held that, under the facts alleged in the complaint, the mobile home park owner suffered a concrete and particularized, actual injury, in the form of added expenses caused by the city's interference with the subdivision application, and therefore had Article III standing to prosecute the action. The panel reversed the district court and remanded for further proceedings.

# COUNSEL

Robert S. Coldren and Mark D. Alpert (argued), Hart, King & Coldren, Santa Ana, California, for Plaintiff-Appellant.

Jeffrey Malawy (argued), Aleshire & Wynder, LLP, Irvine, California; J. Roger Myers and Charmaine Hilton Buehner,

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Myers, Widders, Gibson & Jones, LLP, Ventura, California, for Defendant-Appellee.

**OPINION**

CLIFTON, Circuit Judge:

Fair housing is the topic of the day, as we are presented with a case involving the Fair Housing Act ("FHA"). El Dorado Estates ("El Dorado"), is a mobile home park owner located in the City of Fillmore ("City"), California. Litigation between El Dorado and the City arose out of El Dorado's application for a subdivision of its seniors-only mobile home park, the El Dorado Estates Mobile Home Park (the "Park"). In its complaint, El Dorado alleges that the City interfered with the application by causing unreasonable delays and imposing extralegal conditions because of a fear that subdivision would lead to El Dorado opening the Park to families.

Protracted state court proceedings surrounding the legality of various conditions the City imposed on El Dorado when processing its subdivision application eventually led to El Dorado bringing this action in federal court, alleging that the City's actions violated various provisions of the FHA. El Dorado's complaint was dismissed by the district court for lack of standing under Article III.

We disagree that El Dorado lacks Article III standing. When the injury suffered by El Dorado is construed as alleged in El Dorado's complaint, it becomes clear that El Dorado has suffered a concrete and particularized, actual, injury, in the form of added expenses caused by the City's

interference with El Dorado's subdivision application. Accordingly, we reverse the district court and remand for further proceedings.

## I. Background[1]

El Dorado is the owner of a mobile home park located within the City. The Park is operated by El Dorado as a senior rental park, in which homes are rented out to residents who are 55 years of age or older.

In 2008, at the request of Park residents, the City considered adopting a mobile home rent control ordinance. El Dorado publicly discussed opening the Park to families—that is, to residents of all ages, including children—in response to the rent control ordinance, an action that it is free to undertake without seeking approval from the City or the Park's residents. It instead decided to exit the rental mobile home park business by subdividing the Park into single lots to be sold to residents.

The legal saga that eventually led to this case began when El Dorado applied to the City for a subdivision pursuant to California law. Many residents opposed the subdivision for fear that it would lead to the Park's conversion from a senior park to a family park, and the City twice deemed the application incomplete and imposed additional requirements not contemplated by California law. The City's efforts delayed, increased the cost of, and prevented the subdivision.

---

[1] Consistent with the motion to dismiss stage of the proceedings, we recount the background accepting the allegations in El Dorado's complaint as true.

In response, El Dorado sued the City in California state court. There, El Dorado was successful in obtaining a court order that eliminated the vast majority of the requirements imposed by the City. The City thereafter approved the application, subject to compliance with local flood mitigation regulations and with the California Environmental Quality Act ("CEQA"), a condition that was imposed contrary to the City staff's judgment that the subdivision was exempt from CEQA review.

The CEQA condition may have been merely pretextual. City officials made statements that suggest that the City used the CEQA condition as a way to prevent the conversion to a family park. The City further offered to waive the CEQA condition if El Dorado would commit to maintaining the Park as a senior park. El Dorado went back to state court to challenge the imposition of the conditions. Although the court upheld the imposition of the CEQA environmental review, it prohibited the City from considering local regulations.

In light of the protracted litigation and imposition of the CEQA condition that survived El Dorado's challenge in state court, El Dorado filed this action. El Dorado alleged in its First Amended Complaint as its sole cause of action that the City violated the FHA, namely 42 U.S.C. §§ 3604(a)–(b) and 3617, which prohibit discrimination, including discriminatory land use decisions, on account of familial status. El Dorado further alleged that the City caused it damages through both unreasonable delays and costly, extralegal conditions in processing the subdivision application. In particular, El Dorado alleged that the City "acted with the intent of coercing, interfering with and preventing El Dorado from potentially making housing available for families."

The City filed a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The district court held that El Dorado lacked standing under Article III and therefore granted the City's motion and dismissed El Dorado's complaint without leave to amend.

El Dorado timely appealed the district court's order granting the City's motion to dismiss. We have jurisdiction under 28 U.S.C. § 1291, and we review de novo a district court's decision to grant a motion to dismiss under Rule 12(b)(1). *Colony Cove Props., LLC v. City of Carson*, 640 F.3d 948, 955 (9th Cir. 2011).

## II. Discussion

As it comes to us, this appeal raises only one substantial question: we need to decide whether El Dorado has Article III standing to prosecute this action against the City in federal court. We conclude that El Dorado has standing in the constitutional sense. We therefore reverse the district court's order dismissing the complaint for lack of jurisdiction and remand for further proceedings.

Standing derives from the case-or-controversy requirement of Article III. *Allen v. Wright*, 468 U.S. 737, 750–51 (1984). Standing to bring suit in federal court under Article III is an "irreducible constitutional minimum" consisting of three elements: injury in fact, causation, and redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). An injury in fact is an invasion of a legally protected interest that is both (1) concrete and particularized and (2) actual or imminent, as opposed to conjectural or hypothetical. *Id.* at 560. Causation is satisfied so long as the injury is "fairly traceable to the defendant's allegedly

unlawful conduct." *Allen*, 468 U.S. at 751. Finally, redressability requires only that the injury be likely to be redressed if the requested relief is granted. *Id.* In the context of the FHA and housing discrimination, a plaintiff need not be among the class discriminated against in order to have standing. *See, e.g.*, *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378–79 (1982). In particular, an organization may have standing to bring suit on its own behalf, without relying in a representative capacity on the standing of any third parties. *Id.*

### A. Injury in Fact

The requirement of injury in fact has been the source of much confusion in this case. The district court analyzed the particular provisions of the FHA under which El Dorado brought suit to conclude that the interference the City caused with El Dorado's subdivision application "does not give rise to a claim under the FHA because [El Dorado's] inability to '*potentially* make housing available for families' is not an injury" and held that El Dorado therefore lacked standing. El Dorado argues, however, that the district court's analysis misconstrues the alleged injury suffered by El Dorado. We agree. El Dorado's alleged injury is not its inability to make housing available (whether potentially or not) to families. Rather, its alleged injury consists of the expenses incurred through unreasonable delays and extralegal conditions imposed by the City in processing the subdivision application, allegedly in the belief that El Dorado would be opening the Park to families after subdivision. In other words, the City's interference with El Dorado's subdivision application directly injured El Dorado, regardless of El Dorado's intent with regard to providing housing for families.

It is a concrete and particularized injury suffered only by El Dorado, and it is an actual injury that requires no conjecture.

It is true, as the City argues, that this injury exists as a legally protected interest only because the FHA prohibits discrimination against families, thereby creating a new legal right "the invasion of which creates standing." *Lujan*, 504 U.S. at 578 (quoting *Warth v. Seldin*, 422 U.S. 490, 500 (1975)). What El Dorado has alleged, which we must take as true at the motion to dismiss stage, is that the City has discriminated against families by interfering with El Dorado's subdivision application and conditioning application approval on El Dorado's promising not to open the Park to families. The right not to have to endure housing discrimination, even if one is not among the class of persons discriminated against, is a constitutionally cognizable legal interest supporting standing. *See Havens*, 455 U.S. at 378–79 (holding that an organization has standing in its own capacity to sue to recoup costs incurred in combating racially discriminatory steering practices); *see also id.* at 375–78 (opening the door to a white plaintiff bringing suit against a property owner for housing discrimination against blacks under the rubric of "'neighborhood' standing"). El Dorado's alleged injury thus satisfies the injury-in-fact requirement.[2]

## B. Causation and Redressability

Having established the actual injury alleged by El Dorado, causation and redressability easily follow.

---

[2] Viewing the injury alleged by El Dorado as described in this section, we also conclude that El Dorado's claims are ripe for adjudication. *See Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138–39 (9th Cir. 1999) (en banc).

The delays and additional expenses El Dorado was subjected to were a direct result of the City's alleged interference with the subdivision application. El Dorado's allegations therefore demonstrate that its injury is fairly traceable to the City's conduct.

In addition, the district court could redress El Dorado's alleged injuries. It could award damages that would allow El Dorado to recoup the additional costs incurred in connection with the City's interference with the subdivision application. It could also enjoin the City from continuing to delay the processing of or impose extralegal conditions on the subdivision application. El Dorado's alleged injury is thus likely to be redressed were the court to grant its requested relief.

In sum, we conclude that El Dorado has Article III standing to prosecute this action against the City.

As an alternative basis to affirm the district court's judgment, the City argues that El Dorado has failed to state a claim under Rule 12(b)(6), referencing the motion to that effect it filed in the district court. Having dismissed the action under Rule 12(b)(1), the district court did not reach that Rule 12(b)(6) motion. We decline to take it up in the first instance. Subsequent to the district court's order in this case, the Supreme Court indicated that the question of whether a particular plaintiff has a right to sue under a given substantive statute, though often previously discussed as "prudential standing," is more appropriately dealt with not in terms of standing but instead as a matter of statutory interpretation, determining "whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377,

1387 (2014). If raised, that question should be addressed by the district court.

## III.    Conclusion

El Dorado has established Article III standing. Accordingly, the district court's order dismissing the complaint for lack of jurisdiction must be reversed. We remand for further proceedings.

**REVERSED and REMANDED.**